## Moore's Estate (No. 1).

*Orphans' court—Jurisdiction—Question of title.*

No one can claim in the distribution of an estate in the orphans' court except as creditor, legatee or next of kin, but where it is shown that funds have been wrongfully included in the account as trust funds, or where title or ownership is in another person, to avoid circuity of action jurisdiction may be assumed.

Where a certificate of stock in the name of a son of the decedent is found among the decedent's effects, and the executors claim it as a part of the estate, and the son executes a transfer of it with knowledge that the executors intend to sell it, and the executors do sell it and hold the proceeds as part of the estate, and the son makes no claim on account of it until the audit of the executors' account two years thereafter, the presumption of the son's ownership of the stock is rebutted, and his claim to the proceeds of the stock is properly disallowed.   In such a case the orphans' court has jurisdiction to pass upon the claim.

*Orphans' court—Findings of fact—Review.*

Where the auditing judge in the orphans' court finds as a fact upon sufficient evidence, that the compensation claimed by executors is just and reasonable, and his findings are confirmed by the court below, the appellate court will not reverse in the absence of manifest error.

Argued Jan. 11, 1905. Appeal, No. 276, Jan. T., 1904, by Fidelity Trust Company et al., executors, from decree of O. C. Phila. Co., July T., 1898, No. 56, dismissing exceptions to adjudication in Estate of Andrew M. Moore, deceased. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed in part.

Exceptions to adjudication.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*H. Gordon McCouch*, with him *O. Percy Bright* and *Francis Shunk Brown*, for appellant.

*V. Gilpin Robinson*, with him *John M. Gardner*, for appellee.

OPINION BY MR. JUSTICE ELKIN, April 10, 1905:

Under the first assignment of error it is contended by the appellants that the learned auditing judge and the court below erred in sustaining the claim of Albert H. Moore for the sum of $875, being the proceeds of the sale of ten shares of the capital stock of the Teutonia Fire Insurance Company. From the evidence it appears that among the securities and other papers of Andrew M. Moore, deceased, were found three certificates of stock, issued by said company, in the name of his three sons. One of these certificates for ten shares was in the name of A. H. Moore, the claimant. The other two certificates were in the names of his brothers, George M. Moore and Harry G. Moore. The executors claimed the certificates as part of the estate of the decedent. Each of the two brothers signed the power of attorney on the back of the certificate in his name in order that it might be transferred to the estate. The claimant at first declined to make an assignment of his certificate. The executors desiring to sell this stock, waited

upon the attorney for A. H. Moore, stated the facts relating thereto and asked him to get his client to sign the power of attorney so that the stock could be transferred to the estate and be disposed of. This was done in July, 1901. The accountants sold the stock, received the proceeds, and charged themselves with the sum so received in the account filed. The claimant made no demand upon them for this stock or the proceeds of the sale thereof until the time of the audit in April, 1903, when his attorney presented a claim against the estate for said sum. The auditing judge and the court below concluded to pass upon the merits of the claim. The learned counsel for appellants argue that the orphans' court did not have jurisdiction to hear and decide the question raised. Corson's Estate, 137 Pa. 160, has been cited in support of this contention. The facts in that case are entirely different from those in the case at bar. In that case a bill in equity was pending in the common pleas to determine the ownership of the securities at the time the account was filed in the orphans' court. The claimant having chosen a court of competent jurisdiction in which to determine his rights, could not be heard in a different tribunal to raise the same question in another form of action. This court said he could not do so. In that case the ruling of the court was clearly right. The general rule is that no one can claim in the distribution of an estate in the orphans' court except as creditor, legatee or next of kin, but where it is shown that funds have been wrongfully included in the account as trust funds, or where title or ownership is in another person, to avoid circuity of action jurisdiction may be assumed: Marshall v. Hoff, 1 Watts, 440; Miller's Appeal, 84 Pa. 391; High's Estate, 136 Pa. 222; Qualter's Estate, 147 Pa. 124; Crosetti's Estate, 211 Pa. 490. This case is within the rule just stated, and the court exercised proper jurisdiction.

In passing on this question, the court below said: "There was found among the papers of the testator a certificate for ten shares of stock in this company in the name of Alfred H. Moore, the claimant. As the stock stood in his name prima facie it was his. There was nothing to rebut this presumption. At any rate it was a question of fact which the auditing judge fully considered and his finding must stand unless clearly erro-

neous." In view of the testimony of Mr. McCouch, the second vice president and secretary of the Fidelity Trust Company, we think there was error in this ruling. If there was no testimony to rebut the presumption of ownership the court below would have been right, but there seems to be sufficient evidence to rebut the presumption and to conclusively show that these ten shares of stock belonged to the estate of the decedent and were so treated by the claimant. The witness, Mr. McCouch, was the only person called to testify by either side about the ownership of this stock. His testimony will be found in the Appendix from page 98 to 105. The following are excerpts from his testimony, being answers to questions asked by counsel: " A. The facts are as follows: At the time the executors took over the assets of the estate they found certificates for a certain number of shares of the Teutonia Fire Insurance Company made out in the name of the decedent. They also found certain certificates made out in the name of his sons. My recollection is that there were three of them ; one in the name of each of the sons. The certificates all came into the custody of the executors as part of Mr. Moore's estate. Mr. Robinson : I object to that. The witness : I will omit the last two or three words. They came into the possession of the executors with other assets of the estate."

" The net result of our negotiations was that all stockholders who surrendered their certificates, properly indorsed and transferred, received eighty-seven and one half a share. We held the certificate in such a condition that we could not use it. We then, as I have stated, communicated with counsel for Mr. Moore, and, on explaining the facts to him, he procured Mr. Moore's signature to the assignment of the certificate of stock. That is as far as my recollection goes. We then turned it in with the others and got our money. Q. Did he ever claim that the money should be paid to him? A. He made no claim of that kind, no. On the contrary, it was distinctly recognized by signing that he was making the certificates available to the executors as an asset of the estate."

" A. I beg your pardon. It is quite true, as you have stated, that I have no recollection about the details which you have inquired about, because, in connection with the object I had in view, they were to my mind immaterial; but I have a very

distinct recollection about the essential thing that it was nec-
essary for me to do, to wit: to persuade Mr. Moore that that
was the property of the estate, and to obtain his signature in
order that the estate could collect the eighty-seven and one
half a share on it."

The claimant was entitled to the certificate of stock, if any-
thing. There is no evidence that he ever made any demand
for it. It is true he at first refused to sign the power of at-
torney to transfer, but even at that time he did not assert
ownership to the stock. The executors claimed the stock at
all times as an asset of the estate. When he signed the power
of attorney he must have known under the testimony of Mr.
McCouch, that he was putting the stock in shape to be avail-
able as an asset of the estate. For almost two years after that
time he made no demand either for the stock or the proceeds
of the sale. In other words, he treated it as an asset of the
estate until his counsel raised the question at the audit. The
two brothers, whose certificates stood in their names under
similar circumstances, transferred their stock to the estate and
made no claim for the same. Under these facts, established by
competent testimony, we are of opinion that the presumption of
ownership in A. H. Moore is rebutted; that the shares of stock
belonged to the estate and the proceeds thereof should be ac-
counted for by the accountants. This assignment is sus-
tained.

The appellants contend under the second and third assign-
ments that the court below erred in fixing the amount of the
proceeds of the sale of the Girard House property, on which
commissions should be charged, at $700,000. This property
was encumbered by a mortgage of $400,000, and a ground rent
of $100,000. The court below sustained the finding of the
auditing judge in respect to the amount on which the ac-
countants should be allowed a commission. The learned judge
who delivered the opinion of the court said: "The auditing
judge refused to allow commissions on the said $400,000
mortgage which was paid off and satisfied by giving the holder
thereof trust certificates to that amount secured by the new
mortgage under the trust agreement before referred to. There
was practically a substitution of a mortgage in one form for
one in another. There was no money passed through the

hands of the accountants, and therefore no responsibility on that account. There was, of course, some trouble for them in arranging and carrying out the details of this transaction, but as they are allowed commissions on the whole balance of the purchase money, which amounts to a very considerable sum, this ought to be sufficient compensation." The rulings of the learned judge are predicated on three findings of fact: first, there was practically a substitution of a mortgage in one form for one in another; second, no money passed through the hands of the accountants and therefore there was no responsibility on that account; and third, the commissions allowed to the accountants amounted to a large sum and are sufficient compensation. If the evidence justified the findings of fact there was no error in the conclusions of law.

It may be admitted that under the facts whereby the accountants covenanted to sell clear of encumbrances, there is a doubt as to what is the proper construction to be placed upon these agreements so far as they relate to the amount on which commissions should be allowed. Inasmuch, however, as the auditing judge and the court below have found the compensation allowed to be reasonable and sufficient, we think there was no such manifest error as would require this court to reverse either their findings of fact or conclusions of law in this respect. These assignments are overruled.

It is ordered that the record be remitted to the court below in order that the schedule may be corrected and distribution made in accordance with this opinion, the costs to be paid out of the estate.