# Patterson's Estate.

*Husband and wife—Common law marriage—Findings of fact by auditing judge.*

1. Where the testimony is conflicting or the credibility of witnesses involved, a finding of fact by an auditing judge that a marriage claimed to exist, did not in fact exist will not be set aside by an appellate court unless manifest error is shown.

2. In order for cohabitation and reputation to give rise to a presumption of marriage, the cohabitation must be such as is consistent with and would naturally result from the marriage relation and the reputation must be general.

3. Where the relation between the parties is illicit in its inception, a marriage will not be presumed because of cohabitation and reputation without proof of a change of the relation.

4. The finding of an auditing judge that a woman has not sustained her claim to be the common law wife of a certain decedent, will not be set aside on appeal where it appears from the evidence that decedent was a man of dissipated habits who went on frequent drunken sprees lasting from weeks to months; that he was supported by a weekly allowance from his father's estate; that his home was at his mother's house, to which he went shortly before his death and from which he was buried; that the alleged wife was a woman of ill-repute; that decedent first met her at a house of ill-fame which she conducted and that they subsequently lived together at times in houses she conducted; that two years before his death he made a will in which he mentioned her as "my intended wife"; that there was nothing in their relation to indicate that they regarded their cohabitation as matrimonial; and that during this time she had purchased and sold real estate in her maiden name.

Argued Mar. 27, 1912. Appeal, No. 117, Jan. T., 1912, by Jennie E. Patterson, from decree of O. C. Phila. Co., Oct. T., 1911, No. 192, dismissing exceptions to adjudication in Estate of William E. Patterson, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER. Affirmed.

Exceptions to adjudication.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*Charles L. Smyth* and *Russell Duane,* for appellant. —A promise of marriage at a future time followed by cohabitation and reputation is sufficient to establish a marriage: McCausland's Est., 213 Pa. 189; Comly's Est., 19 Pa. C. C. R. 184; Thewlis' Est., 217 Pa. 307; Drinkhouse's Est., 151 Pa. 294; Strauss' Est., 168 Pa. 561; Hines' Est., 7 Pa. D. R. 137; Com. v. Haylow, 17 Pa. Superior Ct. 541; Vincent's App., 60 Pa. 228; Staiger's Est., 7 Pa. D. R. 351; Com. v. Gamble, 36 Pa. Superior Ct. 146; Coad v. Coad, 127 N. W. Repr. 455; Hutchins v. Kimmel, 31 Mich. 126.

*Ruby R. Vale,* for appellee.—Marriage is a status resulting from an executed civil contract, and as such requires the assent of competent parties to a common intention. Consequently there can be no marriage status without a precedent contract: Com. v. Stump, 53 Pa. 132; Weitzel v. Central Lodge, 1 Pa. D. R. 143; Com. v. Cronin, 13 W. N. C. 76; Guardians of the Poor v. Nathans, 2 Brewster 149; Green's Est., 19 Phila. 55; Physick's Est., 2 Brewster 179; Brinckle v. Brinckle, 12 Phila. 232; King's Est., 9 Kulp 56; Yardley's Est., 75 Pa. 207; Hunt's Appeal, 86 Pa. 294; Grimm's Est., 131 Pa. 199; Hines's Est., 10 Pa. Superior Ct. 124.

There was no evidence of a continuity and constancy of cohabitation: Yardley's Est., 75 Pa. 207; Brinckle v. Brinckle, 12 Phila. 232; Callery's Est., 226 Pa. 469; Green's Est., 19 Phila. 55.

There was no general reputation of marriage: Brinckle v. Brinckle, 12 Phila. 232; Callery's Est., 226 Pa. 469; Thorley's App., 93 Pa. 36; Gross's Est., 9 Pa. D. R. 76; Davis's Est., 204 Pa. 602.

The presumption of marriage from reputation and cohabitation and acknowledgment and conduct falls upon affirmative proof that no marriage ceremony was in fact performed: Hunt's Appeal, 86 Pa. 294; Hunt v. Cleveland, 6 Pa. C. C. R. 592; Bott's Est., 10 Pa. D. R. 122.

Presumption of marriage from cohabitation and reputation, acknowledgment and conduct likewise falls where the parties lived together with an intention of becoming married in the future, but as a matter of fact never did so: Grimm's Est., 131 Pa. 199; Gross's Est., 9 Pa. D. R. 76.

Presumption of marriage from reputation and cohabitation acknowledgment and conduct also falls where the dealings between the parties themselves rebuts the presumption: Physick's Est., 2 Brewster 179.

And, moreover, presumption of marriage from cohabitation and reputation, acknowledgment and conduct likewise is rebutted where the dealings between the parties and third parties shows that they did not consider themselves as man and wife: Smith's Est., 3 Lack. Leg. News 122; Brinckle v. Brinckle, 12 Phila. 232.

Finally, the relation between appellant and decedent being admittedly meretricious at its commencement is presumed to continue so until proof of a change, which appellant having failed to show, rebuts the presumption of a marriage: Reading Fire Ins. & Trust Co.'s App., 113 Pa. 204; Bergdoll's Est., 7 Pa. D. R. 137.

OPINION BY MR. CHIEF JUSTICE FELL, July 2, 1912:

The learned auditing judge found that the appellant had not sustained her claim as the widow of the decedent to share in the distribution of his estate and this finding was sustained by the court in banc. Such a finding of fact from conflicting testimony or when the credibility of witnesses is involved, will not be set aside by an appellate court unless manifest error is shown: Moore's Estate, 211 Pa. 338; Furbush's Estate, 220 Pa. 166. Our examination of the testimony has not convinced us of error or even raised a doubt as to the correctness of the conclusion reached.

There was no proof of the marriage of the decedent and the appellant. Her case rested entirely on the presumption of marriage arising from cohabitation and reputation. The voluminous testimony may be summarized by the statement that the decedent was a man of dissipated habits, who frequently went on drinking sprees, that lasted for weeks, and at times for months. During these periods he lived in various parts of the city and avoided meeting the members of his family. He was supported by a weekly allowance from his father's estate, and all his life he had a home at the house of his mother, where a room was set apart for him. To this home he went shortly before his death and from it he was buried.

Before the appellant met the decedent, she had lived in a number of towns in different parts of the State and had been divorced at the suit of her husband. She came to Philadelphia in 1901, and during the following three years lived under different names at different houses, the character of which she declined to disclose, on the ground that her answers would incriminate and disgrace her. She had been once convicted and sentenced in Philadelphia for keeping a bawdy house. She first met the decedent on his visit to a house of ill-fame that she conducted, and they subsequently lived together at times in houses where she conducted the business of let-

ting apartments.  While living together, she was known to persons who furnished supplies to the house and to the servants as Mrs. Patterson, and to them and to some others the decedent spoke of her and introduced her as his wife.  When they stopped at hotels in other cities, they were registered as man and wife.  Some two years before his death he made a will in which he mentioned her as "my intended wife."  But during the whole of this time he was known to his kindred and friends as a single man, and she as his mistress.  In their relations to each other while occupying rooms in houses rented or owned by her, there was nothing to indicate that they regarded their cohabitation as matrimonial.  During this time she purchased and sold real estate in her maiden name, describing herself as a single woman, kept her bank account in the name of the man from whom she was divorced and loaned money to the decedent and receipted for collateral securities received from him to secure the loan, in her maiden name.

Cohabitation and reputation are circumstances which, when conjoined, may give rise to a presumption of marriage, but the cohabitation must be such as is consistent with and would naturally result from the marriage relation and the reputation must be general. An irregular or inconstant cohabitation and a partial or divided reputation will not sustain a presumption of marriage.  Moreover, when, as in this case, the relation between the parties was illicit in its inception, a marriage will not be presumed because of cohabitation and reputation without proof of a change of the relation: Yardley's Est., 75 Pa. 207; Hunt's Appeal, 86 Pa. 294; Grimm's Est., 131 Pa. 199.

The decree is affirmed at the cost of the appellant.