# Commonwealth of Pennsylvania v. John Phillips, Appellant.

*Husband and wife — Desertion — Order for support — Common law marriage.*

In an action for nonsupport where the prosecutrix was, at the time of making the information, the legal wife of another, she cannot establish a common law marriage with the respondent.

Cohabitation and reputation do not constitute marriage in and of themselves; they are but circumstances from which marriage may be presumed.

Where the relation between prosecutrix and respondent was illicit in its inception, it is presumed to continue so until a changed relation is proved.

Argued March 11, 1924. Appeal, No. 44, Oct. T., 1924, by respondent, from order of Q. S. Huntingdon Co., Dec. Sessions, 1922, No. 17, in case of Commonwealth of Pennsylvania v. John Phillips. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Petition for order of support. Before BAILEY, P. J.

The facts are stated in the opinion of the Superior Court.

The court made an order directing the respondent to pay twenty dollars per month for the support of the prosecutrix. Respondent appealed,

Assignment of Error—Opinion of the Court. [83 Pa. Superior Ct.

*Error assigned* was the order of the court.

*Alvin L. Little,* and with him *William Wallace Chisolm,* for appellant.

*Chester D. Fetterhoof,* District Attorney, and with him *L. H. Beers* and *H. W. Petrikin,* for appellee.

OPINION BY GAWTHROP, J., April 21, 1924:

The only question in this appeal is whether the defendant is liable for the support of the prosecutrix as his wife. The facts are of an unsavory sort, but the question raised compels their consideration. The prosecutrix is a woman of forty-nine years, who more than thirty years ago was married to a man by the name of Kling, with whom she lived and to whom she bore several children. After a time they separated, although no divorce was secured. While the husband was living, the woman cohabited with a man by the name of Hoover. Then she and Hoover separated. In April, 1921, she went to the house of the defendant to act as his housekeeper and was paid wages of $5 per week. After remaining two weeks, she received a better offer and left the defendant's home and secured employment elsewhere. The defendant went to see her and proposed that she come back to him as his wife. The statement of the prosecutrix thus describes what occurred at that time. She testified: "He said, you are going to be my wife. I said, 'but I ain't.' He said, 'I am going to make you my wife.' I says, 'I don't know how; that would be a funny way.' He said, 'Irene, if I sign papers with the company and get passes from the railroad, and introduce you as my wife, and introduce you to the storekeeper and the store makes out slips as my wife, wouldn't you be my wife?' I said, 'I don't know; that would be a funny way.' He said, 'do you think for one minute that I would go to the railroad company and take out passes and ask them for passes, if I wasn't taking you as my

own individual wife?  Do you think I would do that?'
I said, 'I don't know.'  He said, 'that was what he was
going to do.'  He said, 'that is what you are.  I am going
to take you as my wife.  I am going to hold you out as
such.  That is what you are going to be.'  That is what
he did; he held me out as his wife."  About May 1, 1921,
the prosecutrix returned to the defendant's home.  She
remained there for about seven months.  During that
time he introduced her to several persons as his wife.
For a considerable part of that time, they occupied the
same bedroom.  In November they had a disagreement
and the prosecutrix left and made a criminal informa-
tion against the defendant, charging him with the crime
of fornication and bastardy, and had her counsel pre-
pare a statement in a civil suit for breach of promise of
marriage.  The criminal information was signed "Irene
Kling."  On November 26th, the defendant and prose-
cutrix entered into an agreement, under which the prose-
cutrix withdrew her criminal information and agreed
not to file the suit for breach of promise of marriage,
and, for the sum of $25, gave the defendant a full release
of all claims and demands.  The release was signed
"Irene Kling."  About ten months later, she made an
information against the defendant claiming to be his
common law wife and that he had driven her from his
home and refused to support her, and asking the court
to make an order against him for her support.  From
an order of the court of quarter sessions made against
him to pay the prosecutrix $20 per month comes this
appeal.

Under familiar decisions, it is manifest that the order
was made without authority of law.  It is conceded that
no marriage ceremony was ever solemnized between the
parties.  Both parties admit cohabitation, but there is
no testimony to establish any form of marriage.  The
appellee relies upon the rule of law that unequivocal and
frequent admissions of marriage, accompanied by con-
tinued cohabitation and reputation, constitute satis-

factory evidence of marriage.  It must be remembered, however, that both cohabitation and reputation are necessary to establish a presumption of marriage where there is no proof of actual marriage.  Neither cohabitation nor reputation alone is sufficient: Richard v. Brehm, 73 Pa. 140; Craig's Est., 273 Pa. 530.  The record is barren of any evidence that the parties were reputed to be married by their acquaintances.  But cohabitation and reputation are not marriage; they are but circumstances from which marriage may be presumed.  Such presumption may always be rebutted and will wholly disappear in the face of proof that no marriage in fact had taken place: Bisbing's Est., 266 Pa. 529; Hunt's App., 86 Pa. 294; Com. v. McDermott, 75 Pa. Superior Ct. 408; Estate of James McDevitt, 280 Pa. 50.  The cohabitation here was illicit at its beginning.  The rule is that when the relation between a man and woman living together is illicit in its inception, it is presumed so to continue until a changed relation is proved.  Such a relation raises no presumption of marriage: Hunt's App., supra.  We have examined all of the cases cited by the learned counsel for the appellee, and find nothing in any of them inconsistent with the above.  Nor do Nathan's Case, 2 Brewster 149, and Comly's Est., 185 Pa. 208, relied upon by the learned court below, support his conclusion.  In both of these cases, there was evidence of a contract made per verba de præsenti.  This fact alone is sufficient to distinguish those cases from this one.

There being no proof of marriage, the court below was without authority to make the order, of which the appellant complains.

The judgment is reversed.