In the Matter of the Estate of John L. Holben,
Deceased. Exceptions to Widow's Appraisement.

*Decedents' estates—Widow's exemption—Marriage—Validity—Pre-*
*sumption.*

On exceptions to a widow's appraisement on the ground that her
marriage was invalid, the evidence disclosed that claimant's first hus-
band deserted her. After many years, having made an unsuccess-
ful effort to verify a report of his death and to trace his where-
abouts, she married decedent. She was recognized and received
among their relatives, neighbors and acquaintances as his wife,
and so conducted herself until his death more than eighteen years
later. She signed and acknowledged as his wife a number of deeds.

There was further evidence that the first husband did not die
until after her marriage and that he himself married a second
time. Testimony failed to show that he had not secured a divorce.
The marriage of claimant and decedent in due legal form in the
belief that the first husband was dead, the continuance of the re-
lationship after his death and the open and public acknowledgment
of themselves as husband and wife support the presumption of a
valid marriage.

As the same presumption of regularity and legitimacy supports
the marriage of the first husband, there is no presumption that his
legal capacity to remarry arose at any particular time and there-
fore, in aid of the innocence and legitimacy of the claimant, the
presumption is that his legal capacity to marry occurred before the
marriage of the claimant, to the decedent.

In the absence of clear proof in refutation of the presumption
of legitimacy, the petition for a widow's exemption should have
been granted.

KELLER and GAWTHROP, JJ., dissent.

Argued April 16, 1928.   Appeal No. 527, April T.,
1928, by claimant from opinion and decree of Orphans'
Court of Butler County, No. 14, March T., 1927, in the
matter of the Estate of John L. Holben, deceased. Ex-

ceptions to widow's appraisement. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Petition for widow's appraisement. Before HENNINGER, P. J.

The facts are stated in the opinion of the Superior Court.

The court vacated the appraisement. Claimant appealed.

*Error assigned* was the order of the court.

*Thomas W. Watson,* and with him *James E. Marshall* and *W. C. Pentz,* for appellant.

*Joseph W. Galbreath,* of *Galbreath & Galbreath,* for appellant.

OPINION BY HENDERSON, J., July 12, 1928:

The appellant's claim to share as widow in the distribution of the decedent's estate was rejected by the Orphans' Court. It appears from the evidence that the claimant lived with her parents in Tennessee where in January, 1871, she was married to one, Charles A. Eastman. After living together about two years at the home of her parents, her husband took up his residence at his father's home nearby and continued to live there until sometime in 1882, when he left the state without the knowledge of his wife, from which time she had no communication with him nor information as to his whereabouts prior to his death in Michigan in November, 1903. Not long after his desertion, her father having died, she accompanied her mother back to Armstrong County in this State where they lived before going to Tennessee. Some time prior to 1898, the claimant learned from a friend in her former home in Tennessee that it was reported

there that her husband was dead, whereupon she employed an attorney living in that vicinity to ascertain the fact with respect to him and inform her. After inquiry, her attorney reported that he was unable to get any information as to whether her husband was living or dead, or as to his whereabouts if living. On the 18th of August, 1898, the claimant and John L. Holben went to Salamanca in the State of New York where they entered into a marriage contract before a Justice of the Peace there living. Holben had been married before and had a family of twelve children, nine of whom were living at home. He and the claimant returned to his home where the latter was introduced to his family and his neighbors as his wife. She was so recognized and received among their relatives, neighbors and acquaintances and so conducted herself until the death of Holben in January, 1926, up to which time there had been no question raised as to the validity of their marriage. They were esteemed in the community in which they lived and Holben who was a prosperous business man had accumulated a considerable estate. Seven conveyances of real estate executed at different periods between July 19, 1904, and December 8, 1922, conveying land owned by Holben in Armstrong, Jefferson and Butler Counties in Pennsylvania, were signed by Holben and the claimant as husband and wife and regularly acknowledged as such by them. By his last will executed January 1, 1926, Holben disposed of part of his estate as follows: "To my wife, Sarah J. Holben, I bequeath $4,000." Evidence was offered in opposition to the appellant's claim to the effect that Eastman, her husband, after having deserted her, went to Ohio where he lived a few years from which State he moved to Michigan, where on the 12th of May, 1900, he entered into a contract of marriage with Rachael Jennings. He died in that State on the 8th of November, 1903. On the state of facts thus disclosed the Orphans'

Court held that the claimant was not the widow of
the decedent because of her former marriage, and the
fact that her husband was living at the time of the
marriage ceremony between the claimant and Holben
at Salamanca.   The presumption is that the contract
of marriage entered into by the parties before the
magistrate in Salamanca was lawful and this pre-
sumption was recognized by the counsel for the ap-
pellee and the trial court.   There is no support in
the testimony for an inference of intended immorality
in the conduct of the parties.   So far as can be ascer-
tained or may be inferred from the facts developed
they intended in good faith to create the marital re-
lation and the evidence does not admit a conclusion
that their conduct in entering into their contract of
marriage and in their relation afterwards was not
consistent with such purpose.   It was not sufficient to
successfully resist the claim presented to show that
the appellant's husband was living at the time she
entered into the contract with Holben.   It appearing
in the evidence that Eastman was married to a woman
in Michigan soon after Holben and the claimant had
their marriage ceremony, the presumption in favor of
innocence implies that the Michigan ceremony was
lawful.   The appellees must overcome that presump-
tion therefore: Wile's Est., 6 Pa. Superior Ct. 435;
Thewlis' Est., 217 Pa. 307; Richardson's Est., 132 Pa.
292.   This obligation was assumed and testimony was
taken to show that no divorce had been granted to
Eastman at the place of his domicile in Tennessee be-
tween the date of his marriage there and the time of
the marriage contract of the appellant in New York,
but this leaves out of consideration the opportunity of
Eastman to obtain a divorce in Ohio where he was
domiciled for several years, or in Michigan where he
lived the remainder of his life and where he was again
married.   The law will not gratuitously impute crime
to anyone, the presumption being in favor of inno-

cence till guilt appears: Breiden v. Paff, 12 S. & R. 430; Senser v. Bower, 1 P. & W. 450; Thewlis' Est., supra; Wile's Est., supra; I Greenleaf's Evidence, Sec. 35. As the presumption of regularity and legitimacy supports the marriage of Eastman in Michigan, there is no presumption that his legal capacity to be married arose at any particular time, and therefore in aid of innocence and legitimacy of the claimant here, the presumption is that his legal capacity to marry occurred before the marriage of his wife, the claimant: McCausland's Est., 213 Pa. 189; Picken's Est., 163 Pa. 14; I Greenleaf on Evidence, Sec. 41. It was said in Wile's Estate, supra, "that society rests upon marriage, the law favors it, and when a man and woman have contracted marriage in due form, the law will require clear proof to remove the presumption that the contract is legal and valid." Forty-four years after Eastman deserted his wife in Tennessee, and twenty-eight years after the claimant entered into the agreement with Holben to become his wife, an effort is made to show that this agreement was unlawful, and that the relation between the parties believed to be honorable and legitimate for nearly thirty years, was one of concubinage and illegal. After so great lapse of time all presumptions favor the legitimacy of the relation of the parties, and one seeking to establish the contrary should do so by clear and unequivocal evidence, and a decree to that effect ought not to rest on the assumption that the marriage of Eastman in Michigan was without authority of law. It is argued for the appellees that no divorce could have been granted to Eastman in the State of Michigan because the respondent received no notice of such proceeding, but it is sufficient to refer to the fact that many of the divorces granted in this Commonwealth and other states have no support in a personal service. The court having jurisdiction of the subject may enter a decree in conformity with the

laws of the state whether or not that be effective with respect to the rights of the wife in the property of the divorced husband in the state of their former common domicile. It cannot be confidently contended that a decree of divorce entered in the State of Michigan would not be effective to annul the marriage bond, when not appealed from, if entered in conformity with the laws of that state, and the divorced wife, although not served with process, would be at liberty to accept the result of the decree. We find no evidence in the record of an attempt to show that no divorce was granted to Eastman before his marriage in Michigan, and the presumption of legitimacy of that marriage has not been overcome. There is no evidence or contention in the case that the relation between Holben and the claimant was meretricious either before or after their marriage agreement. They intended to become husband and wife through the ceremony engaged in, and their conduct comported with that understanding.

If it be conceded however that a presumption in favor of the regularity of the marriage of Eastman in Michigan and of his capacity to marry before the marriage contract of the claimant with Holben has no support in law, there remains for consideration the effect of the relation and conduct of the parties after the death of Eastman as bearing on the existence of marriage. It is true that the claimant testified on cross-examination that she was never married to Holben after the death of Eastman, but the context shows that she had reference to a marriage ceremony or a formal marriage agreement. Her evidence had no reference to the course of conduct engaged in by herself and Holben amounting to the recognition of the marriage relation between them. They had been married so far as form was concerned; there was no interruption of the belief that they were husband and wife during their joint

lives, and there were repeated acts equivalent to a declaration that they were husband and wife. In seven deeds made while they were living together after the death of Eastman, delivered at various times between 1904 and 1922, they described themselves as husband and wife and acted in that capacity in their acknowledgments of the several conveyances. These instruments certainly show the declaration of the parties of the existence of a marital relation voluntarily assented to: Maryland v. Baldwin, 112 U. S. 490; Travers v. Reinhardt, 205 U. S. 423. It was said in Stevenson's Est., 272 Pa. 291, that a deed made by a woman claiming to be the wife of the decedent for the conveyance of some property owned by her in Ohio, was not conclusive on the question of marriage, but in that case the evidence was overwhelming that the decedent had never lived with the claimant as a husband and the conduct of the claimant after the date of an alleged marriage was wholly inconsistent with her claim. The case is authority, however, for the competency of evidence of such instruments with respect to the acknowledgment of the parties that they sustained the relation of husband and wife, and the decedent here in the solemnity of his will declared that the claimant was his wife. More than that, the home was conducted in a manner leaving no other impression on those familiar with the parties than that they were married. The children addressed the claimant as their mother, and so far as appears in the case a harmonious, respectable and respected domestic condition existed to the last day of the decedent's life. There was convincing evidence therefore that whatever may have been the mistake of the parties as to the legal effect of their marriage agreement, a state of matrimony existed between them after the death of Eastman. It was said in Edwards v. Enterprise Mfg. Co., 283 Pa. 420, "that the presumption that a cohabitation meretricious in its origin continues to be

of that character may be rebutted and proved to have become matrimonial and a lawful common-law marriage established. The change may be established by circumstantial evidence, but the circumstances must be such as to exclude the presumption that the original relation continued and to prove satisfactorily that it was changed to matrimonial union by mutual consent." . In that case the claimant admitted that she was not married; that no ceremony had been performed between them; that "she just went to live with him as others because she cared for him and thought he cared for her. That there was nothing said between them about going to live together as man and wife." Their relation, therefore, was clearly meretricious, but that epithet is not applicable to the claimant in this case. She rested under a belief of the death of her former husband. This proved to be a mistaken belief which rendered her marriage invalid as she discovered after the death of Eastman, but her arrangement with Holben was not the suggestion of lust nor intended to be in violation of law. It could properly be continued therefore after the death of Eastman on the understanding between the parties that they were husband and wife. This, we think the evidence clearly shows, is what they did. All the evidence is to that effect, and at this late day the reputation and conduct of the decedent and claimant ought not to be impeached on the evidence introduced in denial of the claimant's right. Something is predicated by the court of the fact that the parties went to Salamanca to be married after having made application to the Clerk of the Court of their own county for a license, but there is nothing to warrant the conclusion that that was done in defiance of the laws of Pennsylvania. The Clerk of the Court imposed upon them the necessity of showing that the former husband was dead, but that was a task not readily accomplished. His whereabouts had been unknown for many

years, and it was much easier for the parties to go to a place not remote where a marriage could be celebrated without that necessity.  We think, the court was in error therefore in dismissing the appellant's petition, first, because the presumption of a divorce obtained by Eastman was not overcome; and, secondly, because the uncontradicted evidence clearly shows that the claimant and Holben intended to, and did openly and publicly, by word and act, acknowledge themselves to be husband and wife after the death of Eastman.  The long and faithful service and companionship of the claimant in the decedent's household and their continuous conduct and repeated declarations showing that they were so related and regarded should now be considered satisfactory proof.

The decree is reversed and the record remitted to the court below with a procedendo.

DISSENTING OPINION BY KELLER, J.:

I think the case was rightly decided and that the decree should be affirmed on the clear and satisfactory opinion of the court below.

These facts were established beyond question:

Appellant was married to Charles A. Eastman in Tennessee in 1871.  They lived together about a year; then he deserted her, and left the state in 1883; she returned to her former home in Pennsylvania in 1886.

She never obtained a divorce from Eastman, did not know his whereabouts and never was served with any divorce papers.

On August 18, 1898 she was married to the decedent, Holben, by a justice of the peace in Salamanca, New York.

They went there to be married after the Clerk of Courts of Armstrong County, Pennsylvania, where they resided, had refused to issue a marriage license

because of lack of proof that her husband, Eastman, was either dead or divorced.

She had previously written to a lawyer in Manchester, Tennessee, but he could not discover any definite news concerning Eastman.

On May 12, 1900, Eastman married one Rachel Jennings in the State of Michigan.

Eastman died on November 8, 1903.

Shortly thereafter appellant learned from a pension agent that Eastman was alive on the date of her marriage to Holben; that he had since married again and had died. The pension agent, at the time he interviewed appellant, was engaged in investigating the claim of Rachel Jennings to a pension as the widow of Eastman.

Appellant told Holben what she had learned as to Eastman's being alive at the date of their marriage.

They continued to live together thereafter as they had done before, and were recognized in the community as husband and wife, but no ceremony of marriage was ever performed, nor was any contract of marriage in any form ever entered into, after they learned that Eastman was living at the date of their marriage in 1898.

Holben died in 1926. His children by his first wife contested appellant's right to claim as his widow.

No children were born to Holben and the appellant, so the question of legitimacy of issue, in favor of which the law leans most strongly (Wile's Est., 6 Pa. Superior Ct. 435, 441), does not enter into the case.

The opinion of the majority rests upon two presumptions:

(1) The presumption that Eastman obtained a divorce from appellant prior to her marriage with Holben.

(2) The presumption of a valid marriage, from cohabitation and reputation as man and wife for over twenty years after Eastman's death.

(1) As to the first, it must be remembered that Eastman deserted appellant; not she him. The innocent party, who might legally have obtained a divorce did not. Eastman could only have obtained a divorce, prior to appellant's marriage with Holben, by perjury. It is carrying the presumption of innocence to strange lengths, indeed, to relieve one of the charge of bigamy by assuming that he was guilty of perjury. In view of the facts above stated it is more likely that Eastman, before his marriage to Rachel Jennings, heard of appellant's marriage to Holben and assumed that she, the injured party, had obtained a divorce from him, which we know was not the case. The appellees did prove that no divorce was ever obtained by Eastman in Tennessee; and the court below found as a fact that the appellant and Eastman were never divorced. Appellees were not required, in view of the circumstances of this case, to examine the records of every locality where Eastman lived after he left Tennessee in 1883, and prove that he had obtained no divorce in any of them. In Thewlis' Est., 217 Pa. 307, relied on by the appellant and cited in the majority opinion, there was no competent proof or admission that the *deserted wife* had not obtained a divorce from her first husband.

(2) If Eastman did not obtain a divorce from appellant, as the court below found, the second presumption relied upon furnishes no valid ground for reversing the decree of the court below, in view of the undisputed evidence in this case. For, in such event, appellant's marriage to Holben in 1898 was wholly void by reason of her existing prior marriage to Eastman, no matter how innocent her motive and intentions may have been in the matter. As was said by Judge PENROSE in Thewlis' Estate, supra, p. 309, in an opinion adopted by the Supreme Court: "If, when the decedent contracted the second marriage, he had not been divorced from the woman, whom, years before,

he had left in England, the marriage, although solemnized in church, as it was, with due religious ceremony, was void, in spite of the conceded innocence of the wife and her ignorance of the existence of any obstacle. Nor could it have acquired validity if the first wife had survived the husband, no matter how great the lapse of time or what the belief in the community in which the parties resided.''

The majority opinion rests on the fact that after Eastman's death appellant and Holben continued to live together as they had done before, and were reputed in the community to be man and wife and executed deeds and otherwise held themselves out to be such. If this were all the evidence in the case the opinion would rest on a firm foundation, for cohabitation and reputation are circumstances from which a marriage may be presumed, and may be sufficient to support a finding of a marriage duly entered into. But our Supreme Court has said time and again that they do not constitute a marriage and where the claimant herself proves that no valid marriage contract was actually entered into, evidence as to cohabitation and reputation goes for nothing: Tholey's App., 93 Pa. 36, 38; Grimm's Est., 131 Pa. 199, 202. ''Cohabitation and reputation are not marriage; they are but circumstances from which a marriage may be presumed, but such presumption may always be rebutted and will wholly disappear in the face of proof that no marriage in fact had taken place'': Bisbing's Est., 266 Pa. 529, 531; Hunt's App., 86 Pa. 294, 297; Murdock's Est., 92 Pa. Superior Ct. 275, 277.

If, then, appellant's marriage with Holben in 1898 was void because of her existing prior marriage to Eastman, her relation with Holben, no matter how innocently it may have been entered into, did not constitute a valid marriage and did not become such by its mere continuance after Eastman's death. When appellant and Holben learned that their marriage cere-

mony was invalid by reason of her existing prior marriage and that Eastman having died there was no longer a bar to their being lawfully married, they could then have legalized their relation by a marriage, which, being a civil contract, required no religious or other ceremony beyond a contract in words of the present tense uttered with a view of and for the purpose of establishing the relation of husband and wife: Hantz v. Sealy, 6 Binney 405, 408; Com. v. Stump, 53 Pa. 132; Craig's Est., 273 Pa. 530, 533; Murdock's Est., supra, p. 280. But the appellant herself testified that this was never done. Her evidence on the subject could not be clearer:

"Q. You never were married to John L. Holben after November 8, 1903? A. No sir.

"Q. You were never married to anybody after that? A. No sir."

"Q. Was there anything ever said, or any agreement ever made between you and Mr. Holben after the death of Mr. Eastman in regard to your becoming husband and wife? A. No sir, we never talked about it after we came home from New York.

"Q. You relied on the marriage of yourself and Mr. Holben up in the State of New York always afterwards as being the evidence of your marriage? A. Yes sir.

"Q. And you never had any other contract of marriage with him of any kind or form? A. No sir. I didn't."

I think the case is governed by the principle established in Hantz v. Sealy, supra. There a marriage ceremony had been performed between Jacob Hantz and Mary Sealy. They had cohabited as man and wife and had children. Had executed deeds for land in which she was styled his wife and had acknowledged them as such. But at the time of the marriage Hantz had another wife living from whom he had been separated. Subsequently the first wife obtained a divorce

and the parties consulted a lawyer who advised them to celebrate a new marriage. Hantz said "I take you for my wife." But the woman on being told that if she would say the same thing, the marriage would be complete, answered "To be sure he is my husband good enough," thus asserting that they were already lawfully married. It was held that this did not constitute a valid marriage. Subsequent continued cohabitation, without a marriage contract, would not make them man and wife: Bisbing's Est., supra; Murdock's Est., supra; even after twenty years: Com. v. Stump, supra.

No other case in Pennsylvania, which I have been able to find, holds that a wedding ceremony, which was void because one of the parties was already married at the time it was performed, became a legal marriage, after the removal of the original bar or obstacle, by mere cohabitation and reputation and without a new contract of marriage, *where the parties knew of the invalidity of their original contract of marriage* and of the removal of the bar to their being legally married. The decisions are to the contrary.

Sympathy for appellant's condition should not lead to a decision which disturbs the well settled law of marriage in this state.

GAWTHROP, J., concurs in this opinion.