### Estate of Mary F. Hughes.

Argued November 20, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*William C. Alexander,* and with him *Francis Shunk Brown,* for appellant.—The proof was sufficient to establish a common law marriage after the divorce: Thewlis' Estate, 217 Pa. 307; Beegle's Estate, 64 Pa. Superior Ct. 180; Knecht v. Knecht, 261 Pa. 410; Marich's Estate, 8 D. & C. 645; Holben's Estate, 93 Pa. Superior Ct. 472.

*Bryan A. Hermes,* and with him *William J. Mac-Carter, Jr.,* for appellee.—The burden of proving marriage rests on the person who asserts it: Davis Estate, 204 Pa. 602; Stevenson's Estate, 272 Pa. 291; Craig's Estate, 273 Pa. 530.

Where the relation between the parties is illicit at its inception, there is a presumption of continuance

of the illicit relation after the impediment is removed, which can only be overcome by actual marriage but not merely by subsequent cohabitation and reputation: Patterson's Estate, 237 Pa. 24; McDevitt's Estate, 280 Pa. 50; Commonwealth v. Phillips, 83 Pa. Superior Ct. 213; Hunt's Appeal, 86 Pa. 294.

OPINION BY LINN, J., February 28, 1930:

The question is whether there is evidence that appellant was lawfully married to decedent after his divorce in 1922; the learned court below held there was not.

Decedent died July 6, 1925, and litigation over her estate began at once. A petition for issue devisavit vel non was heard, disposed of, appealed, (Hughes Est., 286 Pa. 466) and, pursuant to that decision, the issue was tried by a court and jury, and again appealed (Hughes v. Freeley, 294 Pa. 391), whereupon the verdict being against the alleged will, letters of administration were granted.

At the adjudication of the account of the administrator, the entire balance for distribution was claimed by decedent's three children, and a surviving husband's share was claimed by appellant. After hearing, it was held that appellant "was not her legal husband and is not entitled to participate in the distribution of her estate."

The decision of the appeal depends upon facts that have been found against appellant, and as they are supported by evidence, they must be accepted here: Gongaware's Estate, 265 Pa. 512. The remaining inquiry, then, is whether the law has been correctly applied.

In 1893 appellant married Mary Rooney (not the decedent) and lived with her until 1911, when she left him. Save for a short interval of several months, during which she stayed in Atlantic City, she resided

continuously in Harrisburg where many of her relatives lived, all knowing that she was there.

In 1907 appellant began calling on Mary Freeley (decedent) in Philadelphia; from 1911 to 1915 he lived in her house doing (as the court found) "no outside work but remaining in the house continuously performing the duties of a male domestic." On account of the conduct of appellant and Mrs. Freeley, her children left their mother's home, and from 1918, "she and Hughes lived alone in the house except for the presence occasionally of a little child 9 or 10 years of age." In March, 1919,—his wife still living in Harrisburg,— he went through the form of marrying Mrs. Freeley before a magistrate in Philadelphia, and from that time "continued to live and cohabit" with her, as the court found. In 1921 his wife had him and Mrs. Freeley arrested for bigamy, but, as the court states, the "case never proceeded any further than the arrest and appearance at the magistrate's office in Philadelphia." In 1921 he brought suit for divorce against his wife (Mary Rooney) and in March, 1922, was divorced from her by decree of the common pleas of Delaware County, Pennsylvania. He testified in the present proceeding that, in 1921 and 1922 while the divorce proceedings were pending, he lived in Essington, Delaware County, Pennsylvania. The court did not believe the evidence, because the learned judge states that "all the testimony of the witnesses, who were his neighbors in Rutledge [Delaware County where they moved in 1920, and continued to reside after the divorce], upon whom he relies, is to the effect that between 1920 and the death of the decedent, there was no change in that relationship. Hughes did say that in 1920 or 1922, pending the divorce proceedings, he separated from the decedent; but there was no corroboration of this or any detail. He, having said that he lived in Essington, if this were true as above stated, he could easily have obtained corroboration." After March, 1922, as Hughes had

been divorced from his wife, he could of course marry again, but, according to the record, he did not.

The decision turns on familiar considerations incident to the application of rules of presumption to the evidence. The relations of appellant and decedent were illicit and meretricious from the beginning and so continued until the divorce decree dissolved his marriage with Mary Rooney, and both parties knew during all that period that their relations were unlawful. What presumption, then, does the law apply to their relations from and after the divorce; i. e. what legal consequence does the law attach to those relations? The legal consequence, the presumption, the inference to be made from that evidence, is, that their relations thereafter remained as they were before—meretricious, and condemned by the law. To the inquiry—how long that legal consequence continued? the law answers—until changed by conduct that the law regards as sufficient proof of the establishment of a lawful relation, i. e. marriage. Appellant does not contend that there was a ceremonial marriage after his divorce; nor does he contend that the parties married "by words in the present tense, uttered with a view and for the purpose of establishing the relation of husband and wife": Murdock's Est., 92 Pa. Superior Ct. 275, 279. Yet the burden of proof was on him: Davis' Est., 204 Pa. 602. In the absence of such evidence of marriage, what is there in the conduct of the parties that would rebut the prima facie evidence that there was no lawful marriage? Is there any evidence to prove that the character of their relations changed from what they had been for a period of perhaps fifteen years immediately preceding? To this, appellant replies: 1, they lived together and decedent introduced appellant as "my husband" as she had, of course, done before; 2, that they were described as husband and wife in a deed to them, and so described themselves in a deed they executed which also recited

that decedent was the widow of John Freeley and had "since intermarried with" appellant, but not stating when this marriage took place; 3, that decedent used appellant's name as she had done for years. The legal proposition appellant would apply is thus stated in his brief: "There was no attempt [on the part of appellees] to rebut the evidence of common law marriage by cohabitation and reputation." At this point, appellant's case fails; and it fails because the "cohabitation and reputation" disclosed in this record, will not support the inference that appellant desired made from it. As it is conceded that there is no evidence of common law marriage by words in the present tense, his contention is of course restricted to whether such marriage after the divorce is proved "by cohabitation and reputation." But, as has been stated, their relations were meretricious and illegal for many years prior to March, 1922; and the legal consequence of their conduct prior to that date continues to taint their conduct and cannot be put aside after that date without evidence showing a change of relation thereafter. The law declares that the meretricious quality of their relation continues until removed by marriage. There was no marriage. It cannot be inferred from the cohabitation and reputation in this case unless we go further than any decision in this state has gone, and that we may not do.

We shall refer to the cases relied on by appellant in the order stated in his brief. Thewlis' Estate, 217 Pa. 307, does not help him; the decision is against him. The widow never had any knowledge of her husband's prior marriage, and was innocent of wrongdoing; the presumption of innocence applied by Judge PENROSE attached certain consequences to its application; and to support that presumption, there was evidence that both Thewlis, and his former wife, whom he left in England, had remarried—the wife having children by her second husband, thus also bringing

into the problem the element of legitimacy; the only evidence that could have overcome the effect of the presumption that both parties were lawfully entitled to remarry, (as they did) would have been proof that they had not been divorced before the husband left England, and, of this, there was no evidence; the prima evidence of the fact, i. e. the lawful dissolution of the marriage, became conclusive in the absence of such conclusively rebutting evidence. It is true that, in addition to that consideration, Judge PENROSE referred to cases holding that marriage may be established ''by long continued cohabitation and reputation,''' but he is careful to exclude the cases where the relation was meretricious in its inception, citing Hunt's' Appeal, 86 Pa. 294, one of a long line of cases applying that rule.

The next case cited is Beegle's Est., 64 Pa. Superior Ct. 180. Instead of evidence of meretricious relations between the Beagles before marriage, as we have here, the evidence is that the wife was assured that she had been divorced—a fact which at once deprives appellant of the support of that case. Nor does Knecht v. Knecht, 261 Pa. 410, aid him, for there was a common law marriage within the rule considered at length in Murdock's Estate, supra, see page 417. This is also true of Brown v. Nolen, 298 Pa. 384, cited in the supplemental memorandum. Holben's Estate, 93 Pa. Superior Ct. 472, is the last case cited. At the foundation of that decision is the presumption arising from lack of proof (p. 480) that Eastman, claimant's first husband, who had also remarried, was not divorced from claimant before she married Holben; the relations between Holben and his wife, prior to their ceremonial marriage, had never been meretricious; the conduct of both was found to be innocent.

In none of these cases, was the point decided one that would support appellant's contention. On the other hand, it is well established by decisions that when

the relation between parties had been illicit and meretricious at its inception, a marriage will not be presumed from the facts of cohabitation and reputation alone; there must be proof of marriage; among such decisions are Patterson's Est., 237 Pa. 24, 28; Fuller's Est., 250 Pa. 78, 79; Stevenson's Est., 272 Pa. 291; McDevitt's Est., 280 Pa. 50, 52; Com. v. Phillips, 83 Pa. Superior Ct. 213, 215.

We may add that the decree appealed from is not without support in the opinion of the Supreme Court in which other phases of the relations of these parties were considered: Hughes v. Freeley, (supra), at p. 394.

Decree affirmed at the cost of appellant.