Fitzpatrick, Appellant, *v.* Miller

Argued November 10, 1937.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER, JAMES and RHODES, JJ.

*John S. Rhoda,* with him *Ralph C. Body,* of *Body, Muth & Rhoda,* for appellant.

*Oliver Goldsmith,* for appellee.

OPINION BY BALDRIGE, J., December 17, 1937:

This is an appeal from the decree of the learned court below dismissing appellant's libel to annul an alleged bigamous marriage.

The respondent was married August 19, 1905, to James Arthur Hammond. On March 27, 1909, her father, as she was not of age, filed a libel in divorce in her behalf in Lycoming County. The case was not diligently prosecuted, so that the master's hearing was

not held until September 21, 1910, and a divorce was not granted until December 2, 1910.

On March 23, 1910, more than eight months before the respondent was divorced, she and libellant attempted to enter into a marriage before a minister. The libellant filed the present libel in the Court of Common Pleas of Berks County on January 26, 1935, which was shortly after he discovered that the respondent had not been divorced from Hammond.

From 1910 until 1930, when these parties separated, they cohabited as man and wife, and two children, born to respondent and Hammond, lived with them. In 1921, respondent as a wife joined with libellant in a deed conveying real estate, and, in the years 1911 and 1927, he designated her his wife as beneficiary in two insurance contracts and on a card of a lodge of which he was a member. Invitations to the marriage of respondent's daughter were sent out in the names of Mr. and Mrs. Fitzpatrick. There can be no question that these parties were reputed to be man and wife.

The learned judge below held that while the second marriage was void, and cohabitation and reputation alone are insufficient to prove marriage, the conduct of the libellant and respondent in living together for twenty years, and their repeated acts and declarations indicating they regarded themselves as man and wife, created a presumption of a valid marriage. With this conclusion we are unable to agree.

Section 12 of the Divorce Code of May 2, 1929, P. L. 1237, as amended July 15, 1935, P. L. 1013 (23 PS §12), followed the Act of April 14, 1859, P. L. 647, except it does not limit the right to annulment to an innocent or injured person as did the Act of 1859. That section provides: "In all cases where a supposed or alleged marriage shall have been contracted, which is absolutely void by reason of one of the parties thereto having a spouse living at the time of the supposed or

alleged marriage......such supposed or alleged marriage may, upon the application of either party, be declared null and void."

We find nothing ambiguous in this language, as argued by the appellee. The obvious intention of the legislature was that if a spouse of one of the parties is living at the time the marriage contract is entered into—not when the application for annulment is filed—the contract is void. No doubt can exist that this supposed marriage did not create a marital relationship.

The next question is whether a valid marital status between these parties was established thereafter and existed at the time this proceeding was instituted.

Proof of cohabitation and reputation is not sufficient to establish marriage. They are but circumstances from which a matrimonial contract may be presumed; but such presumption will not prevail if, in fact, there was no marriage: *Bisbing's Est.*, 266 Pa. 529, 531, 109 A. 670; *Murdock's Est.*, 92 Pa. Superior Ct. 275, 277. Proof of marriage must be present: *Patterson's Est.*, 237 Pa. 24, 28, 85 A. 75; *Fuller's Est.*, 250 Pa. 78, 79, 95 A. 382; *Stevenson's Est.*, 272 Pa. 291, 116 A. 162; *Com. v. Phillips*, 83 Pa. Superior Ct. 213.

It is well settled that the law recognizes as valid a common law marriage. It has the same sanctity as one performed by church or civil authorities. To create a valid common law marriage, while not requiring any particular form of solemnization, it must be evidenced by words in the present tense, uttered with the view and for the purpose of establishing the relation of husband and wife: *Com. v. Stump*, 53 Pa. 132; *Craig's Est.*, 273 Pa. 530, 117 A. 221; *Murdock's Est.*, supra.

In *Hantz, Admr., v. Sealy*, 6 Binney 405, a marriage ceremony was performed between Jacob Hantz and Mary Sealy. They cohabited as man and wife, had children, and, as in the case at bar, executed a deed for land in which she was styled his wife. At the time of

the alleged marriage, Hantz had another wife living, from whom he had been separated but not divorced. After a divorce had been granted, the parties consulted a lawyer, who advised them to celebrate a new marriage. Hantz said, "I take you for my wife." The woman was told that if she would say the same thing, the marriage would be complete, to which she answered, "To be sure he is my husband good enough." It was held that those words did not constitute a valid marriage, and, what is pertinent here, that the continued cohabitation and the declarations did not establish a marital status. This case was cited, with approval, in *McLaughlin's Est.*, 314 Pa. 574, 172 A. 107, where the facts were somewhat similar. See, also, *Grimm's Est.*, 131 Pa. 199, 18 A. 1061; *Com. v. Gamble*, 36 Pa. Superior Ct. 146; *Com. v. Bockes*, 103 Pa. Superior Ct. 378, 157 A. 214.

In *McGrath's Est.*, 319 Pa. 309, 315, 179 A. 599, the Supreme Court said:

"It is settled in this State, that, if other proof is not available, 'the marriage may be established,' as was said in *Craig's Est.*, supra, at page 533, 'by proof of reputation and cohabitation, declarations and conduct of the parties and such other circumstances as usually accompany the marriage relation: *Richard v. Brehm*, 73 Pa. 140.' This is another method, complete in itself, of proving marriage. If the proof under this rule is sufficient to convince the fact-finding judge that the parties were married, no other proof is needed, *though the presumption of marriage that such evidence might raise must give way to the positive proof of the party that no contract* was made." (Italics supplied.)

In the case at bar, it is not claimed, and there is not one particle of testimony to show, that any attempt was made to enter into a common law marriage. We are convinced that there was no such marital contract. Only the declarations and conduct of the parties are

relied upon to raise the presumption of marriage. Furthermore, there is convincing evidence that the respondent was aware, when she attempted to enter into the marriage contract with libellant and when she attended the master's hearing in September, 1910, and gave her name as Lola M. Hammond, that she, the moving party in a divorce proceeding, had not obtained a decree severing her previous marriage contract. She testified that the libellant informed her she was to go to the attorney's office to "make a court record" in regard to her divorce and she was of the opinion she had previously procured a divorce, but it is very improbable that a woman of her intelligence would not have full knowledge of the purpose of that hearing and that a divorce had not been obtained.

We have come to the conclusion that both the parties knew of the invalidity of their marriage. It follows that the inception of their marital relationship was meretricious and there is no proof that a legal marriage was ever consummated. Certainly, the beginning of the cohabitation was illicit. Thereafter, notwithstanding their declarations and conduct, no presumption of marriage arose. The only presumption that is warranted is that the illicit relationship continued: *Hunt's Appeal*, 86 Pa. 294; *Grimm's Est.*, supra.

In *Thewlis's Est.*, 217 Pa. 307, 66 A. 519, cited by appellee, both Thewlis and his former wife whom he left in England had remarried and she had children by her second husband. There was no competent proof or admission that the deserted wife had not obtained a divorce, and the court held that a presumption that she had a right to marry existed, otherwise her children would have been illegitimate. It has always been the policy of the courts to legitimate children wherever possible. In the case at bar, we are not concerned with the legitimacy of any children.

In *Holben's Est.*, 93 Pa. Superior Ct. 472, in which

there was a strong dissenting opinion by our present President Judge KELLER, concurred in by Judge GAWTHROP, the validity of the marriage relationship was not questioned until forty-four years after Eastman, the first husband, had deserted his wife in Tennessee and twenty-eight years after the alleged widow of Holben, whose estate was being distributed, had entered into an agreement with Holben to become his wife. It appears, also, from the evidence that after Eastman left Tennessee he married a woman in Michigan. The court was of the opinion that under the facts in that case there was a presumption that Eastman obtained a divorce from the appellant prior to her marriage with Holben, who died in 1926. We do not regard that decision, based upon a different factual situation, as controlling the case in hand.

Exercising our independent judgment, as we are required to do *(Reinhardt v. Reinhardt,* 111 Pa. Superior Ct. 191, 169 A. 408), we are of the opinion that the supposed marriage entered into between these parties, March 23, 1910, was void as it was bigamous and it did not become valid thereafter when the divorce was granted to the respondent, that there was never a common law marriage, and that their cohabitation and reputation, together with their acts and declarations, did not create a legal marriage.

The decree of the lower court is reversed, and it is now ordered that a decree be entered annulling and declaring void the alleged marriage entered into between libellant and respondent.