## McLaughlin's Estate.

Argued March 26, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*J. Elder Bryan,* with him *George B. Dilley* and *I. G. Mathews,* for appellants.

*Clyde V. Ailey, John Schlarb, Leroy K. Donaldson* and *John R. McKim,* for appellees, were not heard.

OPINION BY MR. CHIEF JUSTICE FRAZER, April 23, 1934:

This appeal is from a decree of the Orphans' Court of Lawrence County setting aside the revocation by the register of wills of that county of the appointment of Shuby E. Triplet as administrator of the estate of Edward R. McLaughlin, deceased.

Shuby E. Triplet was appointed administrator on the application of Harold L. McLaughlin, who stated that he, a brother, was "all the next of kin of the intestate." This appointment was opposed by Edna Golden on behalf of herself, her three sisters and a brother, and after hearing upon petition and answer, the letters of administration were revoked by the register of wills. An appeal was thereupon taken to the orphans' court.

Edward R. McLaughlin died while with the American Army in France in 1918, leaving his father, John Wilbert McLaughlin, the beneficiary of a war risk insurance policy. When John W. McLaughlin died on September 15, 1931, there was still due and owing on this policy the sum of $4,344, which then became payable to the heirs of Edward R. McLaughlin, and comprises the estate at issue here.

John W. McLaughlin, the decedent's father, had two families. He was married in 1888 to Cordelia Reed, and they had three children: Harold L. McLaughlin, Edward R. McLaughlin, the decedent, and another who died in childhood. In 1898, while living in Beaver County, Pennsylvania, Cordelia Reed McLaughlin separated from her husband. In 1900, John W. McLaughlin went through the form of a marriage ceremony with Alice Stillings, his sister's daughter, in Youngstown, Ohio. They had six children, the five appellants here and one who died in infancy, and they lived together until John W. McLaughlin's death. This case comes before us on the claim of Edna Golden, one of the children of this second union, who petitioned for a revocation of letters of administration issued to Shuby E. Triplet on the ground that she, petitioner, was a sister of the half blood of Edward R. McLaughlin, decedent, and no valid appointment of administrator of his estate could be made without the waiver of herself and her brother and sisters. Harold L. McLaughlin opposes this claim, asserting that his father was never legally married to Alice Stillings and her children have no inheritable

right to his estate. This the court below found to be sustained by the facts.

At the hearing before the orphans' court, evidence was produced that no divorce had been granted either to John W. McLaughlin or Cordelia Reed McLaughlin in any of the jurisdictions in which they had been respectively domiciled and where they were entitled to sue for divorce, thus overcoming any presumption of a divorce that the circumstances might have indicated, and placing upon appellants the burden, which they failed to sustain, of proving such a decree had been obtained.

Appellants, however, alleged that the relationship of their parents underwent a change after the death of Cordelia Reed McLaughlin (in 1915), and was legalized by a common-law marriage, relying on testimony as follows by Alice Stillings, concerning a conversation that took place between her and John W. McLaughlin: "Q. After the death of Cordelia Reed, did you ever have any conversation with your husband about her death? A. Yes, sir; he said now we are man and wife. Q. What did he say about her death? A. He just said now she was dead and we were man and wife and couldn't be separated then. Q. What did you say? A. I said to keep on living the way we were living. Q. When was this conversation with John McLaughlin? A. Right after Della died, a short time, but I don't just remember how soon but we still lived in Lowelville yet." And again: "Q. What did you say he said to you? A. He said that now that Della was dead we were man and wife and to keep on living that way. Q. Did you say anything? A. I told him, 'Yes.' "

The court below, considering whether these words were sufficient to constitute a marriage contract, whether they "evidenced [such a contract] by words in the present tense, uttered for the purpose of establishing the relation of husband and wife" (Krystkiewicz's Est., 310 Pa. 298, 300; Murdock's Est., 92 Pa. Superior Ct. 275), and assented to by both parties (Stevenson's Est.,

272 Pa. 291, 300), concluded: "A fair construction of this language seems to us to indicate the parties realized their relation prior to this time had been bigamous and they were in danger of prosecution and interference, but that now, Cordelia Reed McLaughlin being dead, the barrier was removed and they might continue this relationship, meretricious in its inception, without fear of molestation, and that they did not deem it necessary to contract a remarriage but were relying on the death of Cordelia Reed McLaughlin as making valid that which before had been invalid. It seems to approach very closely the situation in Hantz v. Sealy, 6 Binney 405. ...... The language imputed to John W. McLaughlin in this case does not......show......an attempt to contract in the present tense......but, in our opinion, rather refers to the condition then existing. He just said, 'now she was dead and we were man and wife and couldn't be separated then,' while the language of the witness is, 'I said to keep on living the way we were living.' In our opinion, this language was not sufficient to establish a common-law marriage and therefore the evidence of reputation and cohabitation is of no avail. 'Neither cohabitation nor reputation of marriage is marriage; they are simply evidence, giving rise, when conjoined, to a presumption of marriage, which, however, is rebuttable and wholly disappears in the face of proof that no marriage in fact has taken place; nor does a relation shown to have been illicit at its commencement raise any presumption of marriage': Grimm's Est., 131 Pa. 199." See also Appeal of Reading Fire Ins. & Trust Co., 204 Pa. 208; McDevitt's Est., 280 Pa. 50, 52; Murdock's Est., supra.

The court below accordingly held that "neither the said Edna Golden, nor any of her sisters or brother have any inheritable blood from Edward R. McLaughlin and that the action of the register of wills in revoking the letters of administration heretofore issued should be reversed."

We see no reason to disturb this decision of the chancellor, concurred in by the court in banc: Krystkiewicz's Est., 310 Pa. 298.

The decree is affirmed at cost of appellants.