Wolford, Appellant, *v.* Whiterock Quarries, Inc. et al.

Argued March 13, 1941.

Before KELLER, P. J., CUNNINGHAM, STADTFELD, RHODES and HIRT, JJ.

*Arthur C. Dale,* with him *George H. Detweiler,* for appellant.

*Edward J. Thompson,* of *Thompson & Baird,* for appellee.

OPINION BY KELLER, P. J., June 30, 1941:

On Monday, December 19, 1938, William C. Wolford was accidentally kil'ed while in the course of his employment with Whiterock Quarries, Inc. On February 3, 1939 the appellant filed her claim petition with the Workmen's Compensation Board alleging that she was the common law wife of the deceased employee and entitled to compensation as his dependent widow. There were no children.

The employer denied that claimant was Wolford's wife and that any compensation was due and payable to her.

The referee who heard the case found as a fact that claimant was not the decedent's common law wife, and held that she was not entitled to compensation.

On appeal to the board, that body affirmed the referee's finding that the claimant had failed to establish a common law marriage by the testimony produced upon the record, and it affirmed the disallowance of the award and dismissed the appeal.

We may note in this connection, that in reciting the basic facts or circumstances on which it rested the finding that the alleged common law marriage had not been established, the board accurately quoted the testimony

of both the claimant and her witness, Ernest Hoy, and in our opinion correctly ruled that the testimony as a whole was insufficient to establish a common law marriage, as laid down in the decisions of the Supreme Court and this Court—see discussion in *Murdock's Estate,* 92 Pa. Superior Ct. 275, pp. 277-285. "Marriage is in law a civil contract, and does not require any particular form of solemnization before officers of church or state, but it must be evidenced by words in the present tense, uttered with a view and for the purpose of establishing the relation of husband and wife." [1]

"In civil cases, reputation and cohabitation are admitted as evidence of an actual marriage, not as themselves constituting a legal marriage ...... When, however, we have the testimony of one of the parties as to the terms of the contract, and that shows that there was no contract by words *in praesenti,* all other evidence on the subject is of no importance." [2]

Claimant then appealed to the court of common pleas, which held that the evidence sustained the finding of the referee and the board that no legal marriage had taken place between Wolford and the claimant, and dismissed the appeal.

Her appeal to this court followed.

Appellant admits that her relations with Wolford prior to December 15, 1938 [3]—four days before his death —were meretricious. She had gone to live with him, without going through the form of a marriage, about twelve years before. It was testified that they were generally known as husband and wife, but every witness called who so testified, personally knew that they had not been married. Her deed to real estate, purchased by him, was in the name of Verna *Wagner*—not Wol-

---

[1] Woodward, C. J. in *Com. v. Stump,* 53 Pa. 132.

[2] *Tholey's Appeal,* 93 Pa. 36, 38.

[3] Really December *17,* 1938, two days before his death—for that was the day they learned of Sarah M. Wolford's divorce.

ford. At the time she went to live with Wolford he had a wife living (Sarah M. Wolford), from whom he had not been divorced. Consequently he could not lawfully marry claimant either by a ceremonial wedding or a common law marriage until his lawful wife died or was divorced from him. Claimant admitted that she had learned of his marriage to Sarah M. Wolford and that his wife was living and not divorced from him, within a couple of months after she went to live with him. Knowing this, she continued to live with him. He expressed an intention to get a divorce and then marry her. The relation was therefore meretricious, and the rule of law is that a relation shown to have been illicit at its commencement does not raise any presumption of marriage: *McLaughlin's Est.*, 314 Pa. 574, 578, 172 A. 107. When the relation between a man and woman, who live together, is illicit at its commencement, it is presumed to continue so until a subsequent actual legal marriage is proved: *Hunt's Appeal*, 86 Pa. 294; *Appeal of Reading Fire Ins. & Trust Co.*, 113 Pa. 204, 6 A. 60; *McDevitt's Est.*, 280 Pa. 50, 124 A. 294; *Com. v. Phillips*, 83 Pa. Superior Ct. 213; *Estate of Mary F. Hughes*, 98 Pa. Superior Ct. 328, 335.

Therefore, as long as Sarah M. Wolford was living and not divorced from William C. Wolford, no amount of cohabiting by him with the claimant, no amount of reputation that they were married, no amount of holding themselves out to the public, could make the relation between them other than unlawful and meretricious: *Cline's Est.*, 128 Pa. Superior Ct. 309, 194 A. 222.

Appellant bases her claim on the fact that on December 15, 1938 Sarah M. Wolford obtained a divorce from William C. Wolford in Indiana County, Pennsylvania (No. 214 September Term, 1938); that on Saturday, December 17th, about seven o'clock in the evening, he received a letter from Sarah M. Wolford which was brought to him by Ernest Hoy, a mail carrier and friend of his, in which she informed him that she had obtained

a divorce; and that upon reading the letter he and claimant entered into a contract of common law marriage. But the language used, as testified to by her,[4] was more consonant with an intention to marry in the future than of entering into an immediate contract of marriage, in words of the present tense, uttered with a view of then and there establishing the relation of husband and wife. In fact, any intention of assuming the immediate relation of husband and wife was negatived by her subsequent testimony that after they learned of the divorce she and Wolford were going to get married, and that they planned to do this on Christmas Day at her home in Pennsburg, Pa., where her father, mother and sister were living; that he told her, after the receipt of the letter, that she could go ahead with her plans for the marriage on Christmas Day; and that he had bought a new suit for the event. She also said, "We sat down and planned what we were going to do over the week end. Q. Planned as to when you were going to be married? A. Yes."

The mailman, Hoy, who was aware of the pending divorce proceeding, testified that on delivering the letter to Wolford the latter opened it and read it and then said, "My divorce went through. Now you are my wife," and the claimant said, "That will be fine." But he also testified, "I don't recall the exact words" (p. 20); and admitted that he knew that they had been planning to be married on Christmas Day if the divorce was granted in time, and that on reading the letter Wolford said, in substance, that they could go through with their plans to be married at Christmas (p. 24).

Our province, like that of the court below, is only to

---

[4] "He read the letter and said to Mr. Hoy and I,—He said— 'Verna is going to be my wife and I am going to be her husband'. He said to me, 'Is that right?' and I said, 'Yes'." (p. 4) And again (p. 13) "He opened [the letter] and read it, and he said, 'Now my divorce is granted', and he said, 'You will be my wife' and I said, 'Yes'. He said 'I will be your husband'."

examine the evidence taken before the referee or board and see if it sustains the findings and conclusions of the board, bearing in mind that it was the duty and province of the board to pass upon any inconsistencies in the evidence and to draw the inferences of fact on which the findings and conclusions rest. We have read the evidence carefully and agree with the learned court below that it fully sustains the findings of fact of the board, and that the conclusions of law naturally and legally follow them. In fact, we do not see how, in the light of the overwhelming weight of the decisions of our appellate courts, any other finding or conclusion could be sustained.

The order of the board, affirmed by the court below is in full accord with the decisions of the Supreme Court and of this Court in *McLaughlin's Est.,* supra; *Grimm's Est.,* 131 Pa. 199, 202, 18 A. 1061; *McDevitt's Est.,* supra; *Murdock's Est.,* supra; *Morris v. McKeesport C. & C. Co.,* 99 Pa. Superior Ct. 112, 115; *Balanti v. Stineman C. & C. Co.,* 131 Pa. Superior Ct. 344, 347, 348, 200 A. 236; *Pegee v. Ricchini,* 140 Pa. Superior Ct. 56, 12 A. 2d 830; *Wilbert v. Comth. of Penna. Reserve Acct.,* 143 Pa. Superior Ct. 37, 17 A. 2d 732; *Baker v. Mitchell,* 143 Pa. Superior Ct. 50, 17 A. 2d 738; *Sharpe v. Federal W. & O. Cleaning Co.,* 144 Pa. Superior Ct. 231, 19 A. 2d 509. Several of these cases are very similar in their facts to the present case. They furnish ample warrant for the order and judgment disallowing the award of compensation.

Judgment affirmed.