## Cioffi v. Cioffi

*Michael A. Barletta,* for libellant.

LAMOREE, J., July 15, 1942.—Libellant, Eleanor Jannuzi Cioffi, petitions the court to annul her marriage to Louis Cioffi. The testimony was taken before the court on May 8, 1942, and the matter was argued by libellant's attorney before the court in banc on July 6, 1942. The facts are these:

Libellant states that she was married to Louis Cioffi, respondent, in Wellsburg, W. Va., on January 27, 1942, she having previously resided on Western Avenue in Ellwood City, Lawrence County, Pa., and respondent having previously been residing on Crescent Avenue, Lawrence County, Pa. Respondent is now and was at the time testimony was taken in the matter, serving in the United States Army, although service of the proceeding had been made upon him before he had been inducted into military service. Respondent filed no answer nor did he appear at any time during the proceeding. Libellant testified that the marriage between her and respondent had never been consummated and that she had never lived with him as his wife. She testified that she had previously been married to one Joe Jannuzi, on June 4, 1930, in Cumberland, Md., at which time she was 16 years old and Jannuzi was not yet 21. She states that she and Jannuzi, together with one Angelo Barberri, went to Cumberland, Md., on June 4, 1930, for the purpose of being married but arrived there too late to secure the services of any official who could perform

the marriage. She further testified that in Cumberland, Md., on the date of June 4, 1930, she and Jannuzi entered into what she refers to as a common-law marriage by stating the following: "I take you, Joe, to be my husband," and that Jannuzi stated at the same time to her, "I take you, Eleanor, to be my wife". They immediately returned to Beaver Falls, Pa., where they lived in the home of Jannuzi as husband and wife. She states that upon arriving in Beaver Falls she and Jannuzi again repeated their vows in the same words in the presence of Angelo Barberri who died in 1934. After living with Jannuzi in Beaver Falls as his wife for a period of weeks, they moved to Spring Avenue, Ellwood City, Pa., where she lived with Jannuzi as his wife for 11 years. In the fall of 1941, she left Jannuzi and went to the home of her mother for the purpose of caring for her mother, which she stated was necessary because of the fact that her mother was getting old. The age of the mother does not appear in the testimony.

Two witnesses were called on behalf of libellant, both of whom testified that libellant and Joe Jannuzi were known in Ellwood City as Mr. and Mrs. Joe Jannuzi for a number of years and that they were reputed to be married. Joe Jannuzi was called on behalf of libellant and corroborated libellant and also stated that they did decide several times to get married, as he referred to it, "a legal marriage", "but it always seemed that something came up to prevent it and they didn't want to get the publicity of it, of having to go through the ceremony." Libellant stated that, from the time she and Jannuzi first exchanged the marriage vows as she refers to them, she felt that she was legally married to Joe Jannuzi. In response to the question "Why did you undertake this second marriage if you felt you were legally married to Joe Jannuzi?" libellant answered, "We had quarrelled about my staying at mother's place, and I hadn't seen Mr. Jannuzi over quite a period of time, and I began to doubt whether he would return or come back again".

It is well to bear in mind the fact that libellant and Joe Jannuzi were both minors at the time they entered into what they refer to as being their common-law marriage. Their legal capacity to contract a valid marriage through the medium of what they refer to as a common-law marriage can certainly rise to no higher plane than could their capacity to contract a valid marriage through the medium of a recognized ceremony.

"A common law marriage implies that both parties are able and willing to marry and that they solemnly enter into a contract of marriage, in words of the present tense, for the purpose of establishing the immediate relation of husband and wife. If any of these essential requirements is lacking, the relation is illicit and meretricious and not a valid common law marriage": Baker v. Mitchell et al., 143 Pa. Superior Ct. 50, 56. In the same case the Superior Court further stated: "The law of Pennsylvania *recognizes* common-law marriages. But they are a fruitful source of perjury and fraud, and, in consequence, they are to be *tolerated, not encouraged;* the professed contract should be examined with great scrutiny, and it should plainly appear that there was an actual agreement entered into, then and there, to form the legal relation of husband and wife" (p. 54).

In the case before us, libellant, in June of 1930, when she was in Cumberland, Md., with Joe Jannuzi for the purpose of being married, was legally incapable of entering into a valid marriage contract even through the medium of a civil ceremony. She would likewise be incapable of contracting a valid marriage through the medium that she refers to as a common-law marriage.

Further, libellant and Joe Jannuzi, during the entire 11 years in which they lived together, did not see fit legally to remedy or change a situation which we are well convinced was long known to both of them.

"When the relation between a man and woman, who live together, is illicit at its commencement, it is presumed to continue so until a subsequent actual legal marriage is proved": Wolford v. Whiterock Quarries, Inc., et al., 144 Pa. Superior Ct. 577, 580.

Libellant's explanation of the reason why she entered into a marriage with respondent would indicate that her feeling toward her relationship during 11 years with Joe Jannuzi was one of convenience that she might terminate as she saw fit.

While the law tolerates common-law marriages it also requires that the essential requisites of such a marriage be fully complied with. The law will not permit its machinery nor its principles to be invoked for the purpose of extricating persons from a condition or situation into which such persons deliberately and knowingly, without respect for the law, have placed themselves.

Entertaining these views we are accordingly making the following

### Order

Now July 15, 1942, the prayer contained in the said libel is refused and the proceedings are dismissed at the cost of libellant.