## Wagner *v.* Wagner, Appellant.

Argued November 13, 1943.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Desmond J. McTighe,* of *Fox & McTighe,* with him *Andrew C. Dana,* for appellant.

*Elmer C. Pfeiffer,* for appellee.

OPINION BY RHODES, J., March 2, 1943:

Respondent appeals from a decree of the court below which annulled her marriage with the libellant on the ground that when the marriage took place she had a husband living, from whom she had not been divorced, and consequently was incapable of entering into a valid, legal marriage.

Since the effective date of the Divorce Code of May 2, 1929, P. L. 1237 (Secs. 12, 15), either party may apply for a decree declaring a bigamous marriage null and void. The right is no longer limited to "an innocent or injured party".[1] See *Mannoni v. Mannoni,* 144 Pa. Superior Ct. 605, 20 A. 2d 915. But the master found, and rightly so, in our opinion, that the libellant did not know until January, 1938, that the respondent was legally incompetent to marry him. It is not disputed that, having a husband, Walter Felt, living, from whom she had not been divorced, the respondent on September 24, 1935, went through the form of a marriage with the libellant in the town of Salina, Onondaga County, New York, after she had procured a marriage license from the Town Clerk in which she had falsely declared that it was her first marriage and that no legal impediment existed as to her right to enter into the marriage state; and had fraudulently made no reply to the following questions, which if

---

[1] Act of April 14, 1859, P. L. 647.

truly answered would have prevented the issuance of the license:

"Former husband or husbands living:

"Is applicant a divorced person:"

The respondent was well aware that, as long as her first husband, Walter Felt, was alive and not divorced from her, she could not legally marry anybody; and that any sexual relations that she had with the libellant following her spurious marriage to him were adulterous and meretricious.

Following their ostensible 'marriage' they lived together as husband and wife in Syracuse, New York, until February, 1937, when they moved to Williamsport, Pennsylvania, where they remarried until February, 1938, and then moved to Glenside, Montgomery County, Pennsylvania, where they lived until August 27, 1938, when libellant left her, or sent her home to her parents, and on October 19, 1938, brought this proceeding to have the marriage annulled.

On January 10, 1938, in a proceeding in divorce brought in Onondaga County, New York, by Walter L. Felt against Hilma Lorena Felt—*Hilma Lorena* being admitted by the respondent to be the Christian or given name which she had borne when she married Felt—a decree was entered divorcing Walter L. Felt from Hilma Lorena Felt, on the ground of adultery with William C. Wagner [this libellant] to become final three months thereafter, which said decree forbade the defendant therein [this respondent] to remarry any other person during the lifetime of the plaintiff, Walter L. Felt, except with the permission of the court. It further appeared of record that on August 31, 1937, this respondent had appeared in said divorce proceeding by an attorney, but had not contested or further defended said action. The appellee, although named as co-respondent in said divorce action, was not served with process, did not appear and was not represented in the action,

The respondent does not deny the illegality and invalidity of her marriage to libellant on September 14, 1935, but defends the present proceeding on the ground that in April, 1938, after the decree of divorce had become absolute, a common law marriage had been entered into between the libellant and herself.

The master and the court below found that no valid common law marriage had taken place. Our review of the evidence is in agreement with their finding on this point.

Respondent's testimony was that after she had received notice of the entry of the final decree of divorce in April, 1938, while she was out riding with the libellant near Glenside, they discussed the subject of their status—using her words—"We discussed the fact that while we were now free to marry, it was really unnecessary to do so, since we were as much man and wife as we ever could be, and we agreed to continue to live as we had been, regarding ourselves in the future as man and wife" (Record 46a).

This, even if believed, falls far short of a contract entered into in words of the present tense, uttered with a view to establish the relation of husband and wife. It is no more clearly and definitely a present and immediate agreement to marry than the language used in *McLaughlin's Est.*, 314 Pa. 574, 577, 172 A. 107; *Stevenson's Est.*, 272 Pa. 291, 294, 116 A. 162; *Hantz v. Sealy*, 6 *Binney* 405, 408; *Com. v. Stump*, 53 Pa. 132; *Craig's Est.*, 273 Pa. 530, 535, 117 A. 221; *Murdock's Est.*, 92 Pa. Superior Ct. 275, 278; *Baker v. Mitchell*, 143 Pa. Superior Ct. 50, 51, 52, 17 A. 2d 738; *Wolford v. Whiterock Quarries*, 144 Pa. Superior Ct. 577, 581, 20 A. 2d 887, and numerous other cases in which it has been held that a valid common law marriage was not effected. The circumstances of this case are very similar to those in *McLaughlin's Est.*, supra, where it was held that a valid common law marriage had not taken place.

It must be remembered that the respondent knew that they were not husband and wife, that their relation was meretricious, and that a *continuance* of such a relation would not make them husband and wife. The law is that a meretricious relation, once established, is presumed to continue until a change to a legal status is proved by clear and convincing evidence. Cohabitation and reputation of marriage—even following a ceremonial wedding—are of no avail to create a lawful marriage where either of the parties is legally incompetent to marry because he or she already has a lawful spouse living and undivorced. And where in such circumstances a meretricious relation is entered into, it can be converted into a valid and legal marriage, after the obstacle to their marriage is removed, only by the consent of *both parties,* established by clear and convincing evidence.

The libellant denied the respondent's story. His version was that they had a discussion about the situation but no agreement was made about anything. He said that the matter of being remarried came up in the course of the discussion—"that it was one way to overcome the present situation by being remarried by a minister and then we would be legally married, no question about it. However, we did not decide at that time to remarry or not to remarry, the discussion was dropped. No agreement was made one way or the other."

It is unlikely that a woman who had knowingly lived in adulterous relations with a man for two and a half years would be squeamish about continuing the meretricious relation.

The court below was of opinion that the evidence did not establish a valid common law marriage contract, saying: "After the divorce decree, they were apparently free to marry, but considered it unnecessary, and they agreed to live together in the future as they had lived

in the past. But unfortunately, their relationship at its inception was meretricious, and the law presumed it to continue. There must be some positive act, some words in praesenti, showing an intention to enter into a marriage contract. Respondent's testimony as to the exact words used is not clear and definite, but consists of conclusions and generalities. Furthermore, the master is doubtful as to the credibility and veracity of the respondent."

Our own consideration of the evidence leads us to disbelieve the respondent's story. She admittedly lied to serve her own ends in securing the marriage license. We believe she would do so again where it would serve her interests to depart from the truth. We find that no valid common law marriage contract was entered into between the parties after her husband, Walter Felt, obtained his divorce.

With this disposition of the case we are not required to pass upon the fourth assignment of error, which deals with the additional reason of the court below, that the clause in the decree of divorce granted Felt in New York, forbidding this appellant to remarry any other person during Felt's lifetime, except with the permission of the court granting the divorce—which is somewhat along the lines of the statutory prohibition contained in section 9 of the Act of March 13, 1815, 6 Sm. L. 286, 289, (not repealed by the Divorce Code of 1929, supra)—would operate to prevent her legal marriage with the appellee in this State during the lifetime of Felt, and we make no ruling on it.

The assignments of error, except the fourth, which is not passed upon, are overruled and the decree is affirmed.