**In re WALSH.**

No. 151875.

District Court, E. D. Pennsylvania.

April 6, 1944.

Abraham Orlow, of Philadelphia, Pa., for petitioner.

George P. Halberstadt, of Philadelphia, Pa., for the United States.

KALODNER, District Judge.

The issue here involved is as to whether Anna Walsh, the petitioner, entered into a common law marriage with one Stewart Harden in 1918. The question arises by virtue of the fact that the petitioner seeks citizenship under Sec. 310(a) of the Nationality Act of 1940, 54 Stat. 1144, 8 U.S.C.A. § 710(a), on the basis of her marriage to one John T. Walsh, a citizen, on December 10, 1929. The Immigration and Naturalization Service has posed the question as to whether this marriage to Walsh was invalid because of a prior "marriage" to Harden not terminated by death or divorce.

As to the facts:

Mrs. Walsh (nee Warsewicz) was born in Simno, Lithuania, in 1898, and was brought to the United States in 1900. In her petition, Mrs. Walsh stated that neither she nor her husband had been married before. She subsequently revealed in testimony given under oath to the Examiner for the Service, that she had lived in a rooming house with one Stewart Harden for one year in 1918-1919; that she used the name Mrs. Harden, and as nearly as she can recall, the neighbors regarded them as married; that she and Mr. Harden had not agreed to consider their relationship a marriage; that she left him after about a year because she realized their relation was "wrong"; that she used the name Harden following the separation until her marriage to Walsh.

Her marriage license to Walsh discloses that she used the name Warren as her maiden name. She explains this on the ground that Mr. Walsh asked her to use the name Warren rather than Warsewicz. After leaving Harden in 1919, Mrs. Walsh was employed at the Friends' Hospital in Philadelphia, and later went into training as a nurse at the Norristown State Hospital and later worked at the City Hospital at Byberry. She testified that she worked in these institutions under the name Anna Harden and was considered to be a married woman. She stated she used the

name Harden even though she did not consider herself married because it was an easier name to use than her maiden name.

If these facts are sufficient to establish a common law marriage between petitioner and Harden in 1918, it is obvious that her marriage to John Walsh is invalid and hence her petition under Sec. 310(a) of the Nationality Act must be denied.

An agreement per verba de praesenti is a necessary element to a common law marriage in Pennsylvania. Tholey's Appeal, 1880, 93 Pa. 36; In re Krystkiewicz's Estate, 1933, 310 Pa. 298, 165 A. 230; In re McLaughlin's Estate, 1934, 314 Pa. 574, 172 A. 107. In the absence of a written contract, or witnesses to the agreement, the marriage may be established by proof of cohabitation and reputation, declarations and conduct of the parties and such other circumstances as usually accompany the marriage relation. In re Craig's Estate, 1922, 273 Pa. 530, 117 A. 221; In re Krystkiewicz's Estate, supra. However, these do not constitute actual marriage, but merely give rise to a presumption of marriage—which may be rebutted in the face of proof no marriage had in fact taken place. In re McDevitt's Estate, 1924, 280 Pa. 50, 124 A. 294; In re McLaughlin's Estate, supra; In re Nikitka's Estate, 1943, 346 Pa. 63, 29 A.2d 521. Moreover, where the relationship is meretricious at its commencement no presumption of marriage arises. Grimm's Estate, 1890, 131 Pa. 199, 18 A. 1061, 6 L.R.A. 717, 17 Am.St.Rep. 796; Kiska v. C. H. Ziegenfuss Co., Inc., 1944, 154 Pa.Super. 100, 35 A.2d 532.

The Pennsylvania rule was stated in Wolford v. Whiterock Quarries, Inc., et al., 1941, 144 Pa.Super. 577, 20 A.2d 887. Said the court on page 579 of 144 Pa.Super., on page 888 of 20 A.2d:

" 'Marriage is in law a civil contract, and does not require any particular form of solemnization before officers of church or state, but it must be evidenced by words in the present tense, uttered with a view and for the purpose of establishing the relation of husband and wife.'

"In civil cases, reputation and cohabitation are admitted as evidence of an actual marriage. * * * When, however, we have the testimony of one of the parties as to the terms of the contract, and that shows that there was no contract by words in praesenti, all other evidence on the subject is of no importance."

In the case of Mrs. Walsh, we have her own testimony that there was no agreement between Harden and herself. The relation began informally and broke up informally. She had not made up her mind to live with Harden permanently, and she left him because she "realized it wasn't right to live with a person if you weren't married to him." This attitude and conduct on the part of Mrs. Walsh evidences that the parties did not consider themselves married. That their neighbors would regard them as married was natural, and although it does not appear that the parties ever introduced each other as husband and wife, even if they did on occasion, it must be remembered that their relation was very intimate and, therefore, at times embarrassing. In re Osterling's Estate, 1936, 323 Pa. 23, 26, 185 A. 790.

The slight evidence as to reputation reveals that the parties regarded each other as husband and wife only when necessary to allay suspicion. Her use of the name Harden after the separation is inconclusive by itself. Mrs. Walsh had decided the name Harden was more convenient than her own name, Warsewicz, and when asked whether she was "Mrs." or "Miss", her close relation to Harden prevailed upon her to say "Mrs."

On the facts of this case I am of the opinion no common law marriage existed between the petitioner and Harden and I conclude therefore, that petitioner's marriage to John T. Walsh is valid.

Accordingly, the petition is granted.

An order may be submitted.