## Kalmbacher v. Kalmbacher

*J. Melvin Kelly*, for petitioner.

*Joseph L. Carrigg*, for respondent.

LITTLE, P. J., March 13, 1945.—Joseph H. Kalmbacher filed a petition in this court on July 23, 1943, in which he seeks to have his marriage with one Jessie D. Kalmbacher annulled and declared void. On February 12, 1912, petitioner was lawfully joined in marriage in Brooklyn, N. Y., with Lillian Brown Kalmbacher. On November 19, 1932, Lillian Brown Kalmbacher was granted a decree in divorce from petitioner by the Hon. Riley H. Heath, justice of the Supreme Court of the State of New York in Broome County, N. Y., where both parties resided. The charge contained in the complaint was adultery. The evidence established the fact that petitioner was guilty of adul-

tery with one Jessie Cochrane. On March 18, 1933, Joseph H. Kalmbacher and the said Jessie Cochrane obtained a license to marry in this county and were joined in marriage on the same day by G. E. Gardner, Esq., at Montrose, Pa.

Pursuant to the filing of the petition, the matter was called before the court for hearing, evidence was taken and briefs filed. The record was reopened for the presentation of further testimony in petitioner's behalf. Evidence was closed and files placed before the court for decision on January 11, 1945. On February 13, 1945, attorney for respondent requested permission to present further testimony. The case was reopened same day. No further evidence was presented and the case was resubmitted March 5, 1945.

From all of the evidence before us we find the following facts:

1. Joseph H. Kalmbacher and Lillian Brown Kalmbacher were legally married in Brooklyn, N. Y., on February 12, 1912.

2. Three children were born to this union.

3. The parties to this marriage separated in the month of December 1929.

4. At the time of separation the parties were residents of Broome County, New York State.

5. On May 27, 1932, at the instigation of Lillian Brown Kalmbacher, summons in divorce was served on Joseph Henry Kalmbacher, petitioner in the instant case.

6. The complaint filed by Lillian Brown Kalmbacher charged defendant, Joseph Henry Kalmbacher, with adultery with an unknown woman at the LaSalle Apartments in Binghamton, N. Y.

7. From the testimony taken in said case it appears that Jessie Cochrane was the woman with whom the adultery was committed by Joseph H. Kalmbacher.

8. That at the time the sexual intercourse constituting the adultery charged occurred, Joseph Henry

Kalmbacher was legally married to Lillian Brown Kalmbacher.

9. That the Hon. Riley H. Heath, justice of the Supreme Court of the State of New York, on November 19, 1932, granted Lillian Brown Kalmbacher a decree dissolving her marriage to Joseph H. Kalmbacher by reason of defendant Joseph Henry Kalmbacher's adultery.

10. That Joseph H. Kalmbacher made an appearance at the trial of this divorce case by his attorney.

11. That Joseph H. Kalmbacher failed to file an answer to the complaint.

12. That the final order in the divorce issue provided that defendant "shall not marry again during the lifetime of the plaintiff, except upon proper application to the court".

13. On March 18, 1933, Joseph H. Kalmbacher and Jessie D. Shipman secured a license to marry in the County of Susquehanna, Pa.

14. That Joseph H. Kalmbacher and Jessie D. Shipman were married at Montrose, Susquehanna County, Pa., by G. E. Gardner, Esq., on March 18, 1933.

15. That Jessie D. Shipman and Jessie Cochrane are one and the same person.

16. That Jessie D. Shipman is the same Jessie Cochrane with whom petitioner, Joseph H. Kalmbacher, committed adultery when he was legally married to Lillian Brown Kalmbacher.

17. That Lillian Brown Kalmbacher was living on March 18, 1933, and is still living in Brooklyn, N. Y.

18. That Joseph H. Kalmbacher did not make application to the Courts of Broome County, N. Y., for permission to marry Jessie D. Shipman.

19. That Joseph H. Kalmbacher was guilty of the crime of adultery with Jessie Cochrane whom he later married.

*Questions of law involved*

1. Does this court have jurisdiction?

2. Was the exemplified record of the divorce proceedings together with the evidence admissible in this proceeding?

3. Was the marriage between Joseph H. Kalmbacher and Jessie D. Kalmbacher void under the terms of the Act of March 13, 1815, P. L. 150, 6 Sm. L. 286, sec. 9?

*Discussion*

The first question before the court is whether we have jurisdiction. It is admitted that neither party resides in the County of Susquehanna. The evidence fails to disclose that either party to this proceeding is an innocent or injured party.

Under the terms of the Act of March 13, 1815, P. L. 150, 6 Sm. L. 286, sec. 9, it is provided that a husband or wife who shall have been guilty of the crime of adultery shall not marry the person with whom the said crime was committed during the life of the former wife or husband, and section 11 of the same act provides that no person shall be entitled to a divorce from the bond of matrimony by virtue of that act who is not a citizen of this State and who shall not have resided therein a whole year previous to filing his or her petition or libel. Section 10 of the Divorce Code of May 2, 1929, P. L. 1237, constituting a codified enaction of our existing divorce law sets forth the grounds for divorce and annulment of marriage; section 9 of the Act of 1815, supra, here in question, is not included in nor amended by this code. Section 12 of the Act of 1929, supra, however, provides for annulment of bigamous marriages and empowers either party to make application to have the marriage declared null and void in accordance with the principles and forms therein prescribed in cases of divorce from the bond of matrimony. Section 15, however, requires that all petitions and libels for divorce shall be exhibited to the court of the county where libellant resides, with certain

exceptions which do not cover the situation before us. This section, however, does provide that where a petition or libel is filed for the annulment of a bigamous marriage it may be exhibited in the county where the marriage was contracted or in the county where either libellant or respondent resides and it is provided that in such cases residence of libellant within the county or State for any period shall not be required. In section 75 of the Act of 1929, supra, it is to be noted that sections 1, 2, 3, 4, 7, 8, 11, 12 and 13 of the Act of March 13, 1815, P. L. 150 (6 Sm. L. 286) are repealed. Therefore, section 9 of the Act of 1815 is still in effect, while section 11, limiting those entitled to relief under the act to citizens of this State, has been repealed. The Act of July 15, 1935, P. L. 1013, amended section 12 of the Act of 1929, supra, providing for the annulment of bigamous marriages by striking out the word "bigamous" and substituting the word "void" and supplying the same remedy for marriages void for any other lawful reason and further, the Act of June 10, 1935, P. L. 294, provides as follows:

"Petitions or libels for the annulment of [bigamous] *void or voidable* marriages may be exhibited to the court of common pleas of the county where the marriage was contracted, or in the county where either the libellant or respondent resides, and, in such cases, residence of the libellant within the county or State, for any period shall not be required."

Relief is not limited to an innocent or injured party. This view is substantiated by the appellate courts in Wagner v. Wagner, 152 Pa. Superior Ct. 4, where Judge Rhodes says:

"Since the effective date of the Divorce Code of May 2, 1929, P. L. 1237 (Secs. 12, 15), either party may apply for a decree declaring a bigamous marriage null and void. The right is no longer limited to 'an innocent or injured party'. See Mannoni v. Mannoni, 144 Pa. Superior Ct. 605, 20 A. 2d 915."

In Juliano v. Juliano, 24 D. & C. 585, it was held that under section 12 of the Divorce Law of May 2, 1929, P. L. 1237, either party to a bigamous marriage may bring proceedings for annulment, whether libellant be the guilty or innocent party, nor is it material whether the guilt, if any, is conscious or unconscious. The Act of 1935, P. L. 294, does not require residence of petitioner for annulment of a void or voidable marriage within the State. The Act of 1935, P. L. 1013, permits either party to apply for the annulment of a void marriage, therefore, relief is not restricted to the innocent party; the guilty party may file the petition. We therefore hold that this court has jurisdiction over the subject matter of this proceeding and of the parties thereto.

We answer the second question in the affirmative. It was necessary that the whole record of the proceeding in the New York court be brought before this court. There was no objection to the certificate accompanying the same and no exception taken to the record of the foreign court except to the admission of the testimony taken in the neighboring State of New York, which was a part thereof. This evidence was admissible as a part of the whole record. The Act of Congress of May 26, 1790, 1 Stat. at L. 122 (and see the Act of March 27, 1804), 28 U. S. C. §687, enacted for the purpose of carrying into effect article IV, sec. 1, of the Constitution of the United States provides as follows:

"The records and judicial proceedings of the courts of any State or Territory, or of any such country, shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, that the said attestation is in due form. And the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they

have by law or usage in the courts of the State from which they are taken." See First National Bank of Omaha v. Crosby, 179 Pa. 63. The judicial record was made up and certified as a whole and not in loose and detached parts.

Respondent was in court in this jurisdiction. She could have called witnesses to attack the jurisdiction of the court in the State of New York; see Commonwealth ex rel. Cronhardt v. Cronhardt, 127 Pa. Superior Ct. 501, where the record and evidence taken in a divorce proceeding in the State of Maryland was received by the lower court. This she failed to do and the complete record is presumed to be valid. It was admissible in evidence in its entirety.

The third question we also answer in the affirmative. The testimony and exhibits before us amply establish the fact that this petitioner was guilty of the crime of adultery with this respondent; that this adultery was the cause of divorce relied upon by petitioner's former wife who is still living. It was also established that petitioner came to Pennsylvania and married respondent without securing permission from the court of his county and State.

Section 9 of the Act of 1815, supra, provides as follows:

". . . the husband or wife, who shall have been guilty of the crime of adultery, shall not marry the person with whom the said crime was committed, during the life of the former wife or husband: but nothing herein contained shall be construed to extend to or affect or render illegitimate any children born of the body of the wife during coverture."

While this section does not specifically declare such a marriage as that before us to be absolutely null and void it does provide that parties under such circumstances shall not marry at any time or place or under any circumstances so long as the former wife of the

guilty spouse shall be alive. The relation is absolutely prohibited, hence under the intendment of the statute the marriage is absolutely void. The legislature, in furtherance of public policy and good morals, may impose a disability upon its citizens restricting their right to contract a marriage. See In re Hare, 26 D. & C. 553, 559.

The word "guilty" was used by the legislature in its ordinary or popular signification. It is not necessary that guilt be first settled in the quarter sessions. Petitioner was guilty of the crime of adultery with respondent and comes within the terms of the act. In Commonwealth ex rel. The Attorney General v. Walter, 83 Pa. 105, 108, the court said:

"We are to presume that the framers of the Constitution used the word 'guilty' in its ordinary or popular signification. That they had in view the distinction between being guilty of an offence, and being convicted of an offence is clear, from their employing both words in the section referred to. In the concluding paragraph thereof they say 'any person *convicted* of wilful violation of the election laws shall, in addition to any penalties provided by law, be deprived of the right of suffrage absolutely, for a term of four years'. The word 'guilty' is defined by our best lexicographers to mean 'having guilt; justly chargeable with a crime; not innocent; criminal'. Hence we say that a man is guilty of an offence when he has committed such offence. We say he has been convicted of an offence when he has been found guilty by the verdict of a jury. We need not elaborate so plain a proposition."

The purpose of this statute is to prevent the type of marriage we have before us. It was clearly the intendment of the legislature that people who could not recognize the sanctity of the marriage vow or grace such a union with honor and fidelity should find it

impossible to consummate a course of foul and disreputable conduct with the seal of legal matrimony.

This marriage was absolutely void. See Kennedy v. Orem, 15 Dist. R. 329; McCalmont v. McCalmont, 93 Pa. Superior Ct. 203. And furthermore, from all the evidence before us we cannot find that either party thereto was an innocent party as contemplated by the legislature in the normal Divorce Code.

The law in Pennsylvania is clearly set forth in Stull's Estate, 183 Pa. 625, 629, as follows:

"By the ninth section it will be perceived there is an absolute prohibition of any subsequent marriage between the guilty person and the paramour during the life of the former wife or husband. It forbids the marriage relation to be contracted in the most general terms. The guilty party 'shall not marry the person with whom the said crime was committed.'

". . . Now believing, as we do, that the statute in question, which we are called upon to construe in the case at bar, is expressive of a decided state policy not to permit the sensibilities of the injured and innocent husband or wife who has been driven by the adultery of his or her consort to the necessity of obtaining a divorce, to be wounded, or the public decency to be affronted, by being forced to witness the continued cohabitation of the adulterous pair, even under the guise of a subsequent marriage performed in another state for the purpose of evading our statute, and believing that the moral sense of the community is shocked and outraged by such an exhibition, we will not allow such parties to shield themselves behind a general rule of the law of marriage, the wisdom and perpetuity of which depends as much upon the judicious exceptions thereto as upon the inherent right of the rule itself'." (p. 632.)

This was cited with approval by the court in Immendorf's Estate, 21 Pa. C. C. 268, 272, when under similar circumstances the alleged widow was not entitled

to a lawful widow's exemption in the estate of her alleged husband since she was never married. Again, in Schofield v. Schofield (No. 1), 51 Pa. Superior Ct. 564, 572, the court said:

"The leading case in Pennsylvania in which this second exception to the general rule has been recognized and applied, and a statute of the state given an exterritorial effect, is Stull's Est., 183 Pa. 625. The court in that case construed the Act of March 13, 1815, P. L. 286, which forbids the husband or wife who has been guilty of the crime of adultery to marry the person with whom the said crime was committed, during the life of the former husband or wife. The court held that the language of the statute clearly indicated that the legislative intention was to forbid the marriage relation to be contracted; that it was aimed at the existence of the marriage state between the parties. Mr. Justice Green, who spoke for the court, said: 'A personal incapacity to marry is imposed. The necessary meaning of this language is that they shall not marry at all, in any circumstances, or at any time, or any place, so long as the injured party is living. So far as the purpose and meaning of this statute are concerned it is of no consequence where such subsequent prohibited marriage takes place. The relation itself is absolutely prohibited, and hence is within the operative words of the statute, without any reference as to where the marriage occurs.' The court further held that the prohibition of the statute, there involved, embodied a distinctive state policy as affecting the morals and good order of society. The parties in that case were subject to the prohibition and were domiciled in Pennsylvania, they went into another state where they might lawfully be married and were there married and immediately returned to their Pennsylvania domicile. The marriage was judged to be void. Each separate nation, or state, must determine for itself

what shall be regarded as immorality. That is contra bonos mores which in any particular country, or among the people of that country, is of such evil example as to shock the general public sentiment. These considerations and the construction which the court gave to the statute there involved, brought the marriage involved in Stull's Estate clearly within both branches of the exception to the rule which we are now considering. The statute prohibited the existence of the marriage relation and forbade the marriage whether the ceremony was performed inside the state or beyond its territorial limits, and the cohabitation of the parties as man and wife was declared to be against good morals, and offensive to decency. The same result had been reached in construing similar statutes in other states, and the authorities were cited and commented upon in the opinion to which we have referred. . . ."

We are constrained to grant the prayer of this petition. We do this, however, with great reluctance in face of the age-old policy of the law which denies the wrongdoer the opportunity to profit by his own wrongdoing. It might seem improper to permit petitioner to take advantage of his own wrong but a reasonable evaluation of the interest of the Commonwealth in the preservation of good morals and public welfare with reference to marriage as an institution far outweighs any misgiving on this feature of the case. The sanctity of marriage as an institution is so important to the morals of society in general that it must be maintained even though some individuals of questionable morals who have flaunted every tenet of this sacred union, profit from their disregard of it. The attitude of this Commonwealth in preserving with commendable zeal the high plane which for generations past has sustained our institution of marriage has never been more aptly described than in the words of the late Judge Newcomb in Commonwealth ex rel. Aronson v. Connor, 6 Lack. Jur. 43, 44, wherein Judge Newcomb said:

"Our statute in question is expressive of the determined policy of this commonwealth which springs from the prevailing moral sense of her people. That policy ought not to permit the public sense of morality and decency to be affronted by the recognition in any way of a marriage contracted in the teeth of the statute."

This marriage was contracted in the teeth of the statute and as it was contrary to good morals, public policy and the law it should be declared null and void.

## Conclusions of law

1. This court has jurisdiction of the parties in this action.

2. The contract of marriage entered into on March 18, 1933, by and between Joseph H. Kalmbacher and Jessie D. Kalmbacher was null and void under the provision of the Act of 1815, P. L. 150, 6 Sm. L. 286.

## Decree

And now, to wit, March 13, 1945, it is ordered, adjudged, and declared that the marriage between Joseph H. Kalmbacher and Jessie D. Shipman (Cochrane) entered into at Montrose, Susquehanna County, Pa., on March 18, 1933, was contrary to the laws of the State of Pennsylvania, and was voidable at the will of either party; that said marriage is, on the application of Joseph H. Kalmbacher, petitioner, therefore, declared to be null and void in the State of Pennsylvania; that the said marriage is annulled and declared void, and the status, relations, rights, duties and powers of Joseph H. Kalmbacher, petitioner, and the said Jessie D. Kalmbacher, respondent, are and shall be in all respects thereafter as fully to all intents and purposes as if they had never entered into the said marriage or alleged marriage aforesaid.

This decree to take effect upon the payment of all costs in this proceeding by Joseph H. Kalmbacher. petitioner.